[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 344.]

LUCAS COUNTY COMMISSIONERS, APPELLANTS, *v.* PUBLIC UTILITIES

COMMISSION OF OHIO, APPELLEE.

[Cite as *Lucas Cty. Commrs. v. Pub. Util. Comm.*, 1997-Ohio-112.]

*Public utilities—Rates—Public Utilities Commission not statutorily authorized to order a refund of, or credit for, charges previously collected by a public utility, when.*

The Public Utilities Commission of Ohio is not statutorily authorized to order a refund of, or credit for, charges previously collected by a public utility where those charges were calculated in accordance with an experimental rate program which was approved by the commission, but which has expired by its own terms.

(No. 96-1539—Submitted September 10, 1997—Decided December 3, 1997.)

APPEAL from the Public Utilities Commission, No. 95-1135-GA-CSS.

———————————

{¶ 1} Appellants, Lucas County Commissioners ("the county"), filed a complaint pursuant to R.C. 4905.26[1] with the Public Utilities Commission, alleging

---

1. R.C. 4905.26 provides in part, "Upon complaint in writing against any public utility by any person, firm, or corporation * * * that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered[,] charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. Such notice shall be served and publication made not less than fifteen days nor more than thirty days before hearing and shall state the matters complained of. The commission may adjourn such hearing from time to time.

"The parties to the complaint shall be entitled to be heard, represented by counsel, and to have process to enforce the attendance of witnesses."

that a commission-approved pilot program, the Weather Normalization Adjustment ("WNA") program, implemented during the winter months of 1994-1995 by intervenor-appellee, Columbia Gas of Ohio ("Columbia Gas"), was unjust and unreasonable in that "the only practical result of the WNA was a windfall to Columbia Gas from customers overpaying eight million five hundred thousand dollars." The county sought an order returning that amount to affected Columbia Gas customers through either a rebate or credit.

{¶ 2} The complaint acknowledged that the program had been approved by the commission in 1994 when it accepted an amended stipulation agreement filed jointly by Columbia Gas and the Collaborative, a broad-based coalition composed of the staff of the PUCO, Columbia Gas, the Ohio Consumers' Counsel, and numerous business, municipal, and civic entities and organizations. The county was not a member of the Collaborative. In its decision, the commission observed that the county had not participated in commission proceedings at the time the WNA program was approved. The county's complaint nevertheless asserted that "Lucas County did not and does not agree with the Settlement Agreement filed by Columbia Gas and the Collaborative."

{¶ 3} The complaint further alleged that the WNA program was to have been in effect from November 1994 to March 1995, and provided a new method of billing for the nongas costs of providing gas to consumers, *e.g.,* gas meter reading, billing, employee salaries, and plant maintenance. Pursuant to the WNA, these costs were billed based on the volume of gas consumed. The complaint alleged that, prior to its approval by the commission, Columbia Gas had represented that the WNA program would level customer gas bills during the potentially extreme weather of winter months and ameliorate potentially larger-than-normal gas bills for consumers during colder-than-normal winter months, while helping to establish an even cash flow to Columbia Gas. The county alleged that, in so doing, Columbia misled its consumers to believe that they would receive a benefit from the WNA program, while over the

course of the program as actually implemented, the average customer bill increased although actual gas usage decreased.

{¶ 4} This effect was caused by the fact that the winter of 1994-1995, during which the WNA was implemented, was the fifth warmest winter in thirty years. As a result, consumer gas bills rose during the initial months of the WNA and consumer response to the implementation of the WNA was negative. The complaint alleged that the average charge to each customer caused by the WNA program from November 1994 to April 1995 was $6.26.

{¶ 5} The complaint acknowledged that the WNA program terminated in early 1995.

{¶ 6} Columbia Gas denied most of the county's allegations and moved to dismiss the complaint. It argued that the complaint failed to state reasonable grounds for complaint within the scope of R.C. 4905.26 and that, even if the county's allegations were assumed to be true, the commission lacked authority under the facts presented to grant the remedy sought by the county.

{¶ 7} The commission granted Columbia's motion to dismiss, finding that "Columbia was required by law to charge its customers as it did in December 1994 and January 1995" and that, because the WNA tariff was no longer in effect at the time of the filing of the complaint by the county, the commission was "simply * * * not authorized to do what the complaints request." The commission thus found that there were no reasonable grounds for complaint within the scope of R.C. 4905.26.

{¶ 8} The cause is before this court upon an appeal as of right.

_____

*Julie R. Bates*, Lucas County Prosecuting Attorney, *Steven J. Papadimos* and *Andrew K. Ranazzi,* Assistant Prosecuting Attorneys, for appellants.

*Betty D. Montgomery*, Attorney General, *Duane W. Luckey* and *Jodi J. Bair*, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

*Andrew J. Sonderman*, *Kenneth W. Christman*, *Stephen B. Seiple* and *Amy L. Koncelik,* for intervening appellee Columbia Gas of Ohio, Inc.

———————————

**MOYER, C.J.**

**{¶ 9}** In reviewing motions to dismiss brought under R.C. 4905.26, the commission has adopted the same standard used by courts in a civil case and deems all of the complainants' factual allegations to be true. *In re Toledo Premium Yogurt v. Toledo Edison Co.* (Sept. 17, 1992), case No. 91-1528-EL-CSS, cited in *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 524, 668 N.E.2d 889, 891. Moreover, in reviewing commission dismissals for failure to state a claim, we also assume the allegations of the complaint to be true. In this review, we therefore accept the allegations of the county to be true. We also remain mindful that we are statutorily empowered to reverse an order of the Public Utilities Commission only if we find the order to be unlawful or unreasonable. R.C. 4903.13.

**{¶ 10}** The commission may exercise only that jurisdiction conferred by statute. *Columbus S. Power Co. v. Pub. Util. Comm.* (1993), 67 Ohio St. 3d 535, 537, 620 N.E.2d 835, 838. Columbia Gas argues that the commission has no authority to order either a credit or rebate based on consumer payments made pursuant to the commission-approved WNA program. We find no statutory authorization for the ordering of such a credit or rebate.

**{¶ 11}** Pursuant to R.C. 4909.17, a utility may not increase, decrease, or change its tariff rates without commission approval. A utility may seek commission approval to change its rates by filing an application under R.C. 4909.18. If the application seeks a rate decrease, the commission may, if it finds the decrease reasonable, approve the decrease without a hearing. *Id.; Time Warner AxS v. Pub. Util. Comm.* (1996), 75 Ohio St.3d 229, 234, 661 N.E.2d 1097, 1102. However, while a rate is in effect, a public utility must charge its consumers in accordance with the commission-approved rate schedule. R.C. 4905.32.

**{¶ 12}** Pursuant to R.C. 4905.26 and 4909.15(D), the commission may conduct an investigation and hearing, and fix new rates to be substituted for existing rates, if it determines that the rates charged by a utility are unjust or unreasonable. The substitution has prospective effect only. *Ohio Util. Co. v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 153, 157-158, 12 O.O.3d 167, 169-170, 389 N.E.2d 483, 487. By its own terms R.C. 4905.26 authorizes complaints to be filed to challenge any utility rate that "is" unjust or unreasonable. The statutory authority is stated in the present tense, supporting the conclusion that the General Assembly did not intend the complaint procedure of R.C. 4905.26 to be available to those dissatisfied with former utility rates. The county here did not seek relief pursuant to R.C. 4905.26 during the WNA program.

**{¶ 13}** We conclude that none of the foregoing statutes authorizes the commission to order refunds or service credits to consumers based on expired rate programs.

**{¶ 14}** In *Keco Industries v. Cincinnati & Suburban Bell Tel. Co.* (1957), 166 Ohio St. 254, 2 O.O.2d 85, 141 N.E.2d 465, this court was asked to consider whether a common-law action for restitution could be brought against a utility for reimbursement of rate revenue that was collected pursuant to rates that were later found to be unreasonable. After reviewing the relevant statutes, we held that no restitution remedy was available, in that the General Assembly had prescribed a comprehensive statutory plan for the fixing of rates for utilities, but had not included a provision for recovering deficiencies for past rates that were subsequently determined to be too low or for refunding rates that were too high. " '[U]nder present statutes a utility may not charge increased rates during proceedings before the commission seeking same and losses sustained thereby may not be recouped. Likewise, a consumer is not entitled to a refund of excessive rates paid during proceedings before the commission seeking a reduction in rates.' " *Id.*, 166 Ohio St. at 259, 2 O.O.2d at 87, 141 N.E.2d at 469, quoting the trial court.

**{¶ 15}** Thus, utility ratemaking by the Public Utilities Commission is prospective only. The General Assembly has attempted to balance the equities by prohibiting utilities from charging increased rates during the pendency of commission proceedings and appeals, while also prohibiting customers from obtaining refunds of excessive rates that may be reversed on appeal. *Id.*[2] In short, retroactive ratemaking is not permitted under Ohio's comprehensive statutory scheme.

**{¶ 16}** The case before us is distinguishable from *Columbus S. Power Co. v. Pub. Util. Comm.* (1993), 67 Ohio St.3d 535, 620 N.E.2d 835. We there held that a utility may charge to recover previously deferred revenues without violating the proscription against retroactive ratemaking when the recovery was pursuant to rates authorized by an initial commission order that the commission had since erroneously limited. In the case before us, the commission recognized the WNA to be an experimental program that the county, in retrospect, deemed to be unsatisfactory. No mechanism for rate adjustment of the WNA, however, had been incorporated in the initial rate stipulation approved by the commission.

**{¶ 17}** The WNA program had been discontinued when the county filed its complaint pursuant to R.C. 4905.26. Therefore, as correctly found by the commission, there simply was no revenue from the challenged program against which the utilities commission could balance alleged overpayments, or against which it could order a credit. Absent such revenue, were the commission to order either a refund or a credit, the commission would be ordering Columbia Gas to balance a past rate with a different future rate, and would thereby be engaging in retroactive ratemaking, prohibited by *Keco.*

---

2. But, see, R.C. 4909.42, which authorizes a utility to charge increased rates, subject to refund after appeal, after the expiration of two hundred seventy-five days from the date of the filing of a rate-increase application.

**{¶ 18}** The Public Utilities Commission of Ohio is not statutorily authorized to order a refund of, or credit for, charges previously collected by a public utility where those charges were calculated in accordance with an experimental rate program which was approved by the commission, but which has expired by its own terms. For the foregoing reasons, we affirm the order of the Public Utilities Commission.

*Order affirmed.*

RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., not participating.

————————————