[Cite as *In re A.B.C.*, 2011-Ohio-531.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:  A.B.C.

JUDGES:
Julie A. Edwards, P.J.
William B. Hoffman, J.
Patricia A. Delaney, J.

Case No. 2010CA00087


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2010JCV00011 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | January 31, 2011 |
| APPEARANCES: | |

For Plaintiff-Appellant

For Defendant-Appellee


WILLIAM T. WHITAKER
ANDREA L. WHITAKER
William T. Whitaker Co., L.P.A.
190 North Union Street, Suite 301
Akron, Ohio 44304

LISA A. LOUY
Stark County Department
of Job and Family Services
221 Third Street SE
Canton, Ohio 44702

*Edwards, P.J.*

**{¶1}** Appellants Kayla Pitts and Parker Crissey ("Mother", "Father", individually; "Parents", collectively) appeal the March 19, 2010 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which adjudicated their minor son dependent. Appellee is Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE FACTS AND CASE

**{¶2}** Parents are the biological parents of A.B.C. (D.O.B. 7/26/09).

**{¶3}** On January 7, 2010, SCDJFS filed a Complaint in the Stark County Court of Common Pleas, alleging A.B.C. to be a dependent, neglected, and/or abused child. SCDJFS filed the Complaint after receiving information A.B.C. had a leg fracture, which Dr. Steiner of the Akron Children's Hospital found to be consistent with physical abuse. Parents agreed to voluntarily place the child with his maternal great grandmother, Margie Pitts. The trial court ordered parents to submit to parenting and drug assessments, and follow all recommendations. The trial court placed A.B.C. in the temporary custody of his maternal great grandmother, Margie Pitts, with protective supervision granted to SCDJFS.

**{¶4}** The trial court conducted an adjudicatory hearing on March 18, 2010. Karen Cirone, an SCDJFS worker, testified on December 4, 2009, the Agency received a call from Akron Children's Hospital concerning A.B.C. SCDJFS was informed A.B.C. had come to the hospital for blood work, but after Mother advised hospital personnel A.B.C. was not able to put pressure on his left leg, an x-ray was taken and a fracture discovered. Cirone accompanied a police detective who interviewed Parents. Parents

did not make any admissions. Mother told the detective and Cirone she had been changing A.B.C.'s diaper one day shortly before Thanksgiving and she heard a "pop" when she lifted his legs by his ankles. Mother stated she immediately called A.B.C.'s pediatrician, who saw A.B.C. on November 30, 2009. Mother also told Cirone and the detective A.B.C.'s pediatrician did not find anything of concern about the child's leg, but ordered blood tests at Aultman Hospital because of the child's propensity to easily bruise. Cirone stated Dr. Steiner concluded the leg fracture was the result of abuse.

{¶5} Dr. Richard Steiner, the Medical Director of the Akron Children's Hospital Care Center, testified he and his staff see between 1100 and 1300 cases of child abuse each year. Dr. Steiner explained how he evaluates a child to determine whether abuse has occurred. With respect to A.B.C., Dr. Steiner explained the child was admitted to the hospital's hematology department due to concerns over "bruising or easy bleeding, not proper blood coagulation." Dr. Steiner noted bruising was observed on A.B.C.'s face, abdomen, and genitals, and the amount of bruising on a four month old child was concerning. Dr. Patton, the hematologist, consulted Dr. Steiner after x-rays revealed a fracture in A.B.C.'s lower left leg. Mother had informed Dr. Patton A.B.C. would not place any weight on his left leg. Based upon this information, Dr. Patton ordered x-rays and ultrasounds to determine whether A.B.C. had deeper bruising or bleeding.

{¶6} After reviewing the x-rays, Dr. Steiner spoke with Mother and Father to determine whether A.B.C. had had any falls or drops which would explain his leg injury. Mother recalled, approximately one week earlier, she was changing A.B.C.'s diaper and heard a "pop" when she lifted the child by the ankles to raise his hips so she could slide a diaper underneath him. Dr. Steiner commented Mother's manner of changing the

diaper was a "very common maneuver * * * done millions of times a day by millions of parents". Dr. Steiner testified Mother's actions were not a viable explanation for A.B.C.'s fractured leg. He explained the fracture would have been caused by a violent snatch and grab motion.

{¶7} Dr. Steiner continued to talk to Mother and Father about their family histories of bone or blood diseases, A.B.C.'s birth history, and his growth. The doctor found nothing in the child's past medical history which would explain the fracture or the bruising. Accordingly, Dr. Steiner ordered additional x-rays, including a skeletal survey which is an x-ray of the entire body, and a CT scan. The x-rays and CT scan revealed no other fractures and the results from blood tests showed no sign of a bleeding disorder. A.B.C. was not presented to the hospital for repeat blood tests despite Mother and Father making at least three appointments to do so. After all the testing and after all the possible diseases which could cause the injuries were eliminated, Dr. Steiner concluded the only diagnosis left was physical abuse or abusive trauma. Dr. Steiner indicated, even if A.B.C. had been brought in for additional blood test, and such tests revealed a bleeding disorder, there were no diseases which would explain A.B.C.'s fracture.

{¶8} On cross-examination, Dr. Steiner testified he reached his diagnosis of abuse based upon both the surface injuries and the fracture. No other fractures were identified by the skeletal survey, and A.B.C.'s bone architecture and anatomy were normal. The doctor added the physical examination produced no findings which would lead doctors to suspect metabolic bone disease. Blood tests conducted to determine whether there was metabolic bone disease were normal. Dr. Steiner acknowledged a

baby could have a fractured ankle due to an accident. He conceded medical professionals often times do not notice fractures.

{¶9} Dr. Meena Rawal, A.B.C.'s pediatrician, testified on behalf of parents. Dr. Rawal classified parents as "very concerned" calling her "appropriately for everything, for any concerns". Parents have always presented A.B.C. for his visits on time and kept the child up to date with his immunizations. Dr. Rawal detailed A.B.C.'s medical history. She indicated the child had problems with certain baby formulas, and was subsequently diagnosed with allergic colitis, which caused some rectal bleeding. A.B.C. was given iron drops after it was learned that the child was anemic.

{¶10} Dr. Rawal recalled she received a call from Mother who had concerns about A.B.C.'s ankle. Mother informed Dr. Rawal she heard a "pop" when she was changing A.B.C.'s diaper. As Mother did not notice any swelling, and because A.B.C. was scheduled the following week for a well-baby visit, Dr. Rawal did not have to see the child at that time. Mother presented A.B.C. to Dr. Rawal on November 30, 2009. Dr. Rawal found nothing concerning about A.B.C.'s leg. During this visit, the doctor observed two bruises on A.B.C.'s left cheek. Parents expressed concern as to the cause of the child's easy bruising. Dr. Rawal ordered blood tests, which were done at Aultman Hospital. The results of the test indicated abnormalities with respect to A.B.C.'s platelet count, the blood clotting time, and his fibrinogens and hemoglobin counts were low. Dr. Rawal recommended further testing at Akron Children's Hospital. Dr. Rawal added Parents demonstrated real and appropriate concern for the care and treatment of their child. She had no reason to believe parents would injure A.B.C.

{¶11} On cross-examination, Dr. Rawal stated she was surprised by the injury and the characterization of it as abuse in light of her interaction with Parents. However, medically, she could not rule out the possibility A.B.C.'s leg fracture was the result of an abusive injury. Dr. Rawal noted the fact A.B.C. bruised at the sight of an injection was not concerning to her as such could happen to any child. The first time Dr. Rawal was ever informed of A.B.C.'s bruising was sometime around Thanksgiving.

{¶12} Mother testified on her own behalf. She stated Dr. Rawal prescribed iron drops for A.B.C. as the child was slightly anemic and such could be the potential cause of his bruising. Mother described the diaper changing incident during which she heard a "pop", and her subsequent conversation with Dr. Rawal, who did not think the incident warranted an immediate visit. Mother testified the results of the blood tests at Akron Children's Hospital ruled out leukemia and other similar conditions. The hematologist wanted additional blood tests to rule out von Willebrand's disease. When a diagnosis of leukemia as a potential cause of A.B.C.'s bruising was mentioned, Parents researched the disease, and learned leukemia could cause bones to break. After learning this information, Mother mentioned the diaper changing incident to the hematologist, who ordered x-rays. Parents were subsequently advised A.B.C. had a healing fracture and the hospital was required to keep him based upon suspected child abuse.

{¶13} On cross-examination, Mother explained she did not take A.B.C. to the emergency room after the diaper changing incident as the child was not fussing and his leg was neither bruised nor swollen. Mother noted she had observed a bruise on A.B.C.'s rib subsequent to his removal from Parents' home. Mother conceded she had no explanation for A.B.C.'s fractured leg as she could not characterize the diaper

change during which she heard a "pop" as violent, which Dr. Steiner had testified would have been the type of force needed to cause the fracture.

{¶14} After hearing all of the testimony, the trial court found A.B.C. to be a dependent child. Thereafter, the parties discussed the case plan and Parents' visitation with the child. Prior to adjourning, the trial court noted:

{¶15} "Okay. I know you're disappointed in this, okay, this is a very strange set of circumstances. I don't know what happened here. I don't have a crystal ball, I can't tell, but I'm responsible for him now, just like you are, okay, and if something this weird would have happened when you had him with somebody else, there's no way that you would put him back there until you had as much information as possible, so that's exactly where I am. I want you to work hard, do the services. It's important that you see him. * * *

{¶16} "So we'll find compelling reasons and reasonable efforts; grant temporary custody to Margie Pitts with protective supervision and indicate that a planning of placement under the terms of the case plan is filed; * * *." Tr. at 116-117.

{¶17} The trial court memorialized its finding via Judgment Entry filed March 19, 2010. It is from this entry Parents appeal, raising the following assignments of error.

{¶18} "I. THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUPPORT THE FINDING OF DEPENDENCY.

{¶19} "II. THE COMPLAINT WAS INSUFFICIENT TO STATE A CLAIM FOR DEPENDENCY.

{¶20} "III. THE TRIAL COURT'S APPLIED A LOWER AND IMPROPER STANDARD WHEN MAKING ITS FINDING OF DEPENDENCY.

**{¶21}** "IV. THE TRIAL COURT ERRED IN QUALIFYING DR. STEINER AS AN ORTHOPEDICS AND RADIOLOGY EXPERT.

**{¶22}** "V. THE JUDGMENT ENTRY FAILED TO COMPLY WITH O.R.C. 2151.28(L)."

**{¶23}** SCDJFS cross-appeals, assigning as error:

**{¶24}** "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD WAS DEPENDENT RATHER THAN ABUSED WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

Appeal

V.

**{¶25}** In their fifth assignment of error, appellants contend that the trial court failed to comply with R.C. 2151.28(L) when issuing its decision.

**{¶26}** R.C. 2151.28(L) provides:

**{¶27}** "(L) If the court, at an adjudicatory hearing held pursuant to division (A) of this section upon a complaint alleging that a child is an abused, neglected, dependent, delinquent, or unruly child or a juvenile traffic offender, determines that the child is a dependent child, the court shall incorporate that determination into written findings of fact and conclusions of law and enter those findings of fact and conclusions of law in the record of the case. The court shall include in those findings of fact and conclusions of law specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child."

**{¶28}** In its March 19, 2010 Judgment Entry, the trial court issued findings of fact which merely indicated that the court found "by clear and convincing evidence that [A.B.C.] is dependent in that his condition or environment is such as to warrant the State, in the best interest of the child to assume guardianship." Although the judgment entry includes the statutory language of R.C. 2151.04(C), the trial court failed to include the specific findings upon which it based its determination that A.B.C. is a dependent child as required by R.C. 2151.28(L).

**{¶29}** The fifth assignment of error is sustained.

**{¶30}** Appellants' first, second, third and fourth assignments of error, as well as appellee's assignment of error on cross-appeal, are rendered premature by our decision on appellants' fifth assignment of error.

**{¶31}** The judgment of the Stark County Court of Common Pleas, Juvenile Division, is reversed. This case is remanded to that court to make findings of fact and conclusions of law in accordance with the statute.

By: Edwards, P. J.

Delaney, .J. concurs

Hoffman, J. dissents

_____

_____

_____

*Hoffman, P.J.,dissenting*

{¶32} In the spirit of expeditious review and determination of cases involving dependent children pursuant to App.R. 11.2,[1] and because I believe the salient facts as stated by the parties in their briefs and those contained in the record, when coupled with the trial court's assessment thereof as set forth in its judgment entry, are sufficient to allow adequate review, I respectfully dissent from the majority opinion.

{¶33} I would address Appellant's first assignment of error, sustain it and reverse the trial court's decision. My reasons follow.

{¶34} That a child is an abused, neglected, or dependent minor must be established by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but does not reach the extent of the certainty required to establish "beyond a reasonable doubt" in criminal cases. It is that quantum of evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re G.S.,* 10th Dist. No. 05AP-1321, 2006-Ohio-2530, ¶ 4, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469 477.

{¶35} R.C. 2151.04 defines "dependent child" as "any child * * *(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship".

---

[1] A.B.C. was originally removed from Appellants' home on January 7, 2010. The adjudicatory hearing followed on March 18, 2010, with the entry presently under review having been filed on March 19, 2010. Approximately 10 months or more will have elapsed during this current appellate review. To reverse and remand at this stage will result in the appellate process having to begin afresh following the trial court's decision on remand.

**{¶36}** "[A] finding of dependency under R.C. 2151.04 must be grounded on whether the children are receiving proper care and support. The focus is on the condition of the children, not the fault of the parents." *In re Bibb* (1980), 70 Ohio App.2d 117, 120. See *In re Alexander C.,* 164 Ohio App.3d 540, 553, 2005-Ohio-6143, ¶ 45. "The determination that a child is dependent requires no showing of fault on the parent's part." *In re Bolser* (Jan. 31, 2000), 12th Dist. Nos. CA99-02-038 and CA99-03-048. Rather, the focus is solely on the child's condition or environment, and whether the child was without adequate care or support. See *In re Ament* (2001), 142 Ohio App.3d 302, 307. However, a court may consider a parent's conduct insofar as it forms part of the child's environment. *In re Alexander C.,* 164 Ohio App.3d 540, 2005-Ohio-6134, ¶ 51, citing *In re Burrell* (1979), 58 Ohio St.2d 37, 39. A parent's conduct is significant if it has an adverse impact on the child sufficient to warrant state intervention. *In re Ohm,* 4th Dist. No. 05CA1, 2005-Ohio-3500, ¶ 21, citing *In re Burrell,* 58 Ohio St.2d at 39.

**{¶37}** While the child's present "condition or environment" is the focus of a dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." *In re Burchfield* (1988), 51 Ohio App.3d 148, 156. "[T]he child does not first have to be put into a particular environment before a court can determine that * * * [the] environment is unhealthy or unsafe." *Id.,* citing *In re Campbell* (1983), 13 Ohio App.3d 34, 36. See *In re East* (1972), 32 Ohio Misc. 65 ("a child should not have to endure the inevitable to its great detriment and harm in order to give the parent, guardian, or custodian an opportunity to prove her suitability").

{¶38} Upon review, I find SCDJFS did not prove by clear and convincing evidence A.B.C. is a dependent child. Dr. Rawal testified A.B.C. was anemic, which could make the child susceptible to bruising. The child bruised after being given immunizations and after blood draws by medical personnel. With respect to the fractured ankle, Mother immediately called the pediatrician after hearing a "pop" while she was changing A.B.C.'s diaper. Dr. Rawal asked Mother enough questions to make a medical determination that the child did not need to be immediately seen. When A.B.C. was seen by Dr. Rawal a few days later, A.B.C.'s ankle looked normal and the child was using it appropriately and had good strength. Despite assurances from Dr. Rawal, Mother addressed A.B.C.'s ankle with Dr. Patton, the hematologist at Akron Children's Hospital. Dr. Steiner testified the manner in which Mother described changing A.B.C.'s diaper, despite hearing a "pop", could not have resulted in the fracture. Dr. Steiner conceded, if the fracture occurred outside of Parents' care, such would not be immediately apparent to them. Accordingly to Dr. Steiner, medical professionals often fail to notice fractures.

{¶39} The fact there was no direct explanation for A.B.C.'s fractured ankle is insufficient to find the child dependent under the totality of the circumstances in this case. There was not clear and convincing evidence A.B.C.'s condition or environment had an adverse effect on him. After hearing all the evidence, the trial court itself stated it did not know what happened. The trial court's commendable concern for the future care of the child is not a sufficient substitute for a firmly based belief or conviction the child is dependent. There is evidence A.B.C. was receiving proper, timely care and support from Parents. The focus for an adjudication of dependency is on the condition

of the child, not the fault of the parents. *In re: Bibb* (1980), 70 Ohio App.2d 117. SCDJFS was "required to present evidence of conditions or environmental elements that were adverse to the normal development of the [child]." *In re: A.C.*, 9th District No's. 03CA0053, 03CA0054, 03CA0055, 2004-Ohio-3248, paragraph 14.

{¶40} I find SCDJFS failed to prove by clear and convincing evidence A.B.C. was a dependent child.

_____

HON. WILLIAM B. HOFFMAN

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:  A.B.C.

:
:
:
:
:            JUDGMENT ENTRY
:
:
:            Case No. 2010CA00087

For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is reversed and this cause is remanded to that court to make findings of fact in accordance with the statute.  Costs to appellee.

_____

_____

_____