[Cite as *In re J.E.D.*, 2013-Ohio-2186.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: J.E.D., | : | JUDGES: |
| ALLEGED DEPENDENT CHILD | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 12-CA-107 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Civil appeal from the Richland County Court of Common Pleas, Juvenile Division, Case No. 2012 DEP 00014

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    May 28, 2013

APPEARANCES:

For Appellee

CHRISTOPHER ZUERCHER
Richland County Children Services
731 Scholl Road
Mansfield, OH 44907

For Appellant

JOHN S. DILTS
28 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

**{¶1}** Appellant appeals the September 21, 2012 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, finding J.E.D. to be a dependent child and granting protective supervision to Richland County Children's Services.

*Facts & Procedural History*

**{¶2}** J.E.D. was born on June 25, 2003 and is the biological child of appellant J.G. ("Mother") and Father. J.D. was born on September 22, 2000 and is also the biological child of Mother and Father. On February 8, 2012, Richland County Children's Services ("RCCS") filed a complaint alleging J.E.D. was an abused, dependent, or neglected child and seeking an order of protective supervision to RCCS. On March 1, 2012, RCCS filed an amended complaint, again alleging J.E.D. was an abused, dependent, or neglected child and requesting temporary custody of J.E.D. be given to maternal grandmother with an order of protective supervision to RCCS, or, in the alternative, that protective supervision be granted to RCCS.

**{¶3}** An evidentiary hearing was held on May 4, 2012. The testimony focused on an incident involving O.S., born March 14, 1994, a minor when the incident occurred, but who turned eighteen years old prior to the hearing in this action. At the time of the incident, O.S. was living in the same household as J.E.D. O.S. is the biological child of Mother and the stepdaughter of Father. Father has functioned as a father figure to O.S. for a number of years. In September of 2011, J.E.D., J.D., and O.S. lived with Mother. Mother worked in the evening, so the three children frequently spent the evening hours at Father's home. All parties agree O.S. was truant from school on September 27, 2011, that on September 28, 2011, Mother and Father confronted her about the truancy,

and that O.S. was free from injury when she entered Father's home on September 28, 2011.

{¶4}   O.S. testified both Mother and Father questioned her repeatedly with regard to her truancy the previous day, accusing her of abusing drugs and engaging in sexual activity while she was absent from school.   While O.S. initially denied being truant, she eventually admitted she skipped school the previous day.   Mother and Father took O.S.'s cell phone away and denied her permission to attend an upcoming homecoming dance.   O.S. testified that during the course of the interrogation, Mother slapped her on the cheek and hit her on the back with an open fist.   Further, that Father hit her in the eye, slapped her in the face, and struck her several times in the back, arms, and legs.   O.S. testified she was at a friend's house watching movies when she skipped school, but told Mother and Father she was abusing drugs and engaging in sexual activity to stop them from interrogating and hitting her.   O.S. testified Mother did not attempt to stop Father when he struck O.S. and that J.E.D. was upstairs in the house when the incident occurred and may have been able to hear what was happening.   O.S. returned to Mother's house until early the next morning when she went to her maternal aunt's house.   Her maternal aunt reported the incident to the Mansfield Police Department.   O.S. had a swollen right eye, bruises to her neck and shoulder, and injuries to her lower lip and left ear.   O.S. stated Father had hit her before, but never that badly.

{¶5}   Shennel Gordon, O.S.'s maternal aunt, testified O.S. appeared at her door the morning of September 29, 2011, with her right eye swollen and bruises behind her ear and neck area.   Officer Miller of the Mansfield Police Department testified he saw

O.S. in the early morning after the incident occurred and took O.S.'s statement. He stated the pictures of the injuries to O.S. including a swollen right eye, marks on neck and left ear, and an injury to her lip fairly and accurately represented O.S.'s physical condition when he made contact with her to investigate.

{¶6} Jon Sherels, Mother's boyfriend, testified O.S., J.E.D., and J.D. never displayed signs of physical abuse and that Mother has no issues in raising or disciplining the children. He was out of town when the incident occurred. Sherels does not believe O.S. is being truthful about the incident, but has not known O.S. to previously make these types of allegations. Diane Davidson, Father's wife, stated she was present the night of September 28, 2011 and that Father was not abusive towards O.S. Rather, O.S. changed her story several times and was pouting after having her phone taken away. Diane Davidson does not recall seeing Mother slap O.S. and testified Father never touched O.S.

{¶7} Mother testified O.S. changed her story several times regarding where she was during the day of September 27, 2011, but eventually O.S. admitted she was using drugs and engaging in sexual relations after repeated questioning. Mother admitted to slapping O.S. one time with an open hand on her cheek. Mother stated O.S was very upset they took away her cell phone and could not go to the homecoming dance. Mother testified Father never hit or abused O.S. and O.S. did not have any injuries on her when they left Father's house that night. Mother does not know how O.S. received her injuries, but suspects the prohibition on O.S. going to homecoming had something to do with the injuries. Mother stated Father never hit her when they were in a

relationship, but she once had to call the police because Father would not return her car keys when she wanted to leave the house.

**{¶8}** Father testified he never inappropriately or excessively disciplined O.S., J.E.D, or J.D. He stated he never hit O.S. and there were no marks on her when she left the house the night of September 28, 2011. He is unsure of how O.S. received her injuries, but also suspects it had to do with taking away her cell phone and the prohibition on attending the homecoming dance. He did not see Mother slap O.S. Father stated O.S. finally admitted to using drugs and engaging in sexual relations on the day she skipped school after he first questioned her about it and went through the text messages on her phone. Father was arrested for domestic violence in 1997, but cannot recall any other criminal charges.

**{¶9}** On May 10, 2012, the magistrate issued his decision finding by clear and convincing evidence that J.E.D. is a dependent child and, after all parties consented to proceed with disposition and declined to present further evidence regarding disposition, by a preponderance of the evidence that it is in the best interest of J.E.D. that he remain in the legal custody of Mother with protective supervision granted to RCCS. After the parties requested findings of fact and conclusions of law, the magistrate issued a supplemental decision on June 15, 2012, again finding that J.E.D. is a dependent child, granting legal custody to Mother, and granting protective supervision to RCCS. Both Mother and Father filed objections to the magistrate's decision. On September 21, 2012, the trial court overruled both Mother and Father's objections and approved the magistrate's decision. Mother filed an appeal of the trial court's September 21, 2012 judgment entry and raises the following assignments of error on appeal:

{¶10} "I. THE COURT ERRED IN DETERMINING BY CLEAR AND CONVINCING EVIDENCE THAT PHYSICAL ABUSE OF OLIVIA SMITH WAS PROVEN TO SUCH AN EXTENT THAT PROTECTIVE SUPERVISION OF THE MINOR CHILD BE GRANTED TO RICHLAND COUNTY CHILDREN SERVICES.

{¶11} "II. THE COURT ERRED IN DETERMINING BY CLEAR AND CONVINCING EVIDENCE THAT THIS CHILD WAS DEPENDENT.

{¶12} "III. THE COURT ERRED WHEN IT DID IT'S OWN INDEPENDENT INVESTIGATION AS TO THE VERACITY OF OLIVIA SMITH AND SOMEHOW DETERMINED EVEN THOUGH SHE HAD THREE (3) PRIOR CASES WITH THIS COURT AND HAD ACKNOWLEDGED BEING UNTRUTHFUL WITH HER MOTHER AND MR. DAVIDSON SHE WAS MIRACULOUSLY TRUTHFUL IN THIS INSTANCE."

{¶13} For purposes of disposing of Mother's three assignments of error, we find it appropriate to address the assignments of error in reverse order.

III.

{¶14} Appellant claims the trial court erred in going outside of the facts presented to it when, at the hearing, the trial court indicated it checked into prior cases involving O.S.

{¶15} At the conclusion of the evidentiary hearing, the trial court stated he checked O.S.'s record with the juvenile court and found she had one informal truancy and was involved in two different dependency or abuse cases. Appellant argues the trial court improperly relied on this evidence to establish the truthfulness of O.S. We disagree.

**{¶16}** Appellant asserts the trial court violated the Code of Judicial Conduct in checking the prior record of O.S. We note this court is without jurisdiction to determine whether the trial court violated the Code of Judicial Conduct. "Allegations of judicial misconduct are not cognizable on appeal but are matters properly within the jurisdiction of Disciplinary Counsel." *Parker v. Elsass,* 10th Dist. Nos. 01AP–1306, 02AP–15, 02AP–144, 2002–Ohio–3340, ¶ 25, citing *Szerlip v. Szerlip,* 5th Dist. No. 01CA09, 2002–Ohio–2541, ¶ 18. *See also State v. Richard,* 8th Dist. No. 85407, 2005–Ohio–3723, ¶ 8.

**{¶17}** However, if we examine appellant's argument, we find no error was committed by the trial court. In this case, the fact that O.S. was involved in two previous dependency or abuse cases was established both in the Amended Complaint and in the Guardian Ad Litem's interim report, which the trial court stated he reviewed in preparation for the evidentiary hearing. During the evidentiary hearing, the Court inquired of Mother whether she recalled the two previous dependency cases and she said she "vaguely" remembered the cases, but did not recall what happened or why the complaints were filed. The Court also inquired of Mother whether she was aware of an informal truancy complaint filed against O.S. in 2008. Mother denied knowing about the complaint. Appellant did not object to the trial court's line of questioning and the argument advanced by appellant was not included in appellant's objections to the magistrate's decision. A party waives any error that arises during the trial court proceedings if that party fails to bring the error to the court's attention at a time when the trial court could avoid or correct the error. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

{¶18} Further, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass,* 10 Ohio St .2d 230, 227 N.E.2d 212 (1967). While the trial court mentioned the record of O.S., the trial court did not improperly rely on her record in determining the credibility of the witnesses. Rather, the trial court focused instead on the lack of believability of Mother and Father's testimony with regards to the September 28th incident. The trial court stated it "cannot accept the testimony of Mother and Father as to what happened that night." In its June 15, 2012 judgment entry, the trial court did not assert it found O.S. to be more credible or truthful due to her juvenile record, or lack thereof. The findings of fact and conclusions of law focused on the testimony of the individuals at the hearing and the trial court "specifically reject[ed] the alternative explanation of her injuries offered by [Mother] and [Father] as implausible." Thus, in reading the trial court's judgment entry, we find the trial court did not improperly rely on O.S.'s record in its factual findings or legal conclusions and any mention of her record at the close of the hearing was not in error.

{¶19} Assignment of Error III is overruled.

II.

{¶20} Appellant claims the trial court erred in finding J.E.D. to be dependent under R.C. 2151.04(C) and (D). We disagree.

{¶21} R.C. 2151.04 provides, in relevant part, that a dependent child means any child:

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

(D) To whom both of the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."

{¶22} A finding of dependency must be supported by clear and convincing evidence. Juv. R. 29(E)(4). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v.*

*Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶23} Appellant argues the trial court erred in finding O.S.'s testimony truthful and in finding O.S.'s testimony made J.E.D. a dependent child when O.S. previously acknowledged being untruthful.  Appellant further asserts the trial court erred in finding J.E.D. dependent as to appellant because the magistrate found appellant imposed "appropriate discipline" and because there was no finding that J.E.D. was abused by a third party.

{¶24} O.S. admitted to initially telling Mother and Father she went to school on September 27, 2011, then confessing to them she had been truant from school, and that she came home on September 27, 2011 when school was out to make it seem like she attended school that day.  However, the fact that she initially was untruthful with Mother and Father does not prohibit the trial court from finding clear and convincing evidence pursuant to 2151.04.  O.S. specifically testified she was telling the truth when describing the details of the September 28th incident.  Mother confirms she slapped O.S. on the cheek.  Shennel Gordon testified O.S. appeared at her door the morning of September 29, 2011, with her right eye swollen and bruises behind her ear and neck area.  Officer Miller testified O.S. told him Mother struck her to start the incident and watched while Father struck O.S. several times.  He noted the visible injuries on O.S. were consistent with O.S.'s version of events.  While both Mother and Father testified they did not abuse O.S. during the September 28th incident, they both, along with John

Sherels, stated O.S. has never fabricated a story like this before. It is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass,* 10 Ohio St .2d 230, 227 N.E.2d 212 (1967). Here, the trial court found the testimony of Mother and Father regarding the incident to be inconsistent and implausible. The trial court further found because the abuse of O.S. was "motivated by juvenile misbehavior," J.E.D. is in danger of suffering similar abuse.

**{¶25}** Further, while the trial court found appellant imposed the "appropriate discipline" of depriving O.S. of her cell phone and prohibiting her from attending homecoming, the trial court specifically found that during the physical abuse, "[Mother] was present, engaged in inappropriate discipline of O.S., and supported [Father] in his administration of abuse, allegedly for disciplinary purposes." O.S. testified appellant smacked her and never attempted to stop Father when he repeatedly struck O.S. several times. Appellant herself admitted to slapping O.S. on the check. The trial court's finding that appellant simultaneously imposed appropriate discipline during the incident when she imposed inappropriate discipline and supported Father in his inappropriate discipline does not prohibit a finding of dependency.

**{¶26}** Finally, appellant argues a dependency finding was inappropriate for J.E.D. because there was no finding J.E.D. was ever physically abused by any third party. However, R.C. 2151.04(D) does not require a finding that a third party abused J.E.D. In accordance with the statute, the trial court found "J.E.D. resides in a household in which a member of that household committed an act that constituted physical abuse of his then-minor sibling, O.S. and because of circumstances

surrounding such abuse and other conditions in that household, J.E.D. is in danger of suffering similar such abuse." As discussed above, the evidence supports the finding by the trial court that J.E.D. is dependent.

{¶27} Accordingly, we conclude the trial court's finding that J.E.D. is dependent and is supported by clear and convincing evidence. Appellant's second assignment of error is overruled.

*I.*

{¶28} Appellant argues the trial court erred in granting RCCS protective supervision of J.E.D.

{¶29} A juvenile court has broad discretion in the disposition of an abused, neglected, or dependent child. *See* R.C. 2151.353(A) and Juv.R. 29(D). R.C. 2151.353(A) provides that when a child is adjudicated dependent, the trial court may commit the child: to protective supervision, temporary custody, or legal custody of a parent or another person. A juvenile court must consider the best interests of the child when it considers the dispositional alternatives enumerated in R.C. 2151.353(A). *In re Cunningham* (1979), 59 Ohio St.2d 100, 107, 391 N.E.2d 1034.

{¶30} In the present case, the trial court found by a preponderance of the evidence it was in J.E.D.'s best interest to remain in Mother's home with protective supervision pursuant to R.C. 2151.353(A)(1). Appellant argues that physical abuse of O.S. was not proven to such an extent to warrant protective supervision.

{¶31} Upon review, we find no abuse of discretion in the trial court's decision to place J.E.D. under the protective supervision of RCCS. An "abuse of discretion" is exhibited in a ruling that is unreasonable, arbitrary, or unconscionable. *In re M.P.,* 2d

Dist. No. 2011 CA 71, 2012-Ohio-2334, 2012 WL 1900166, ¶ 10. It is not enough that a reviewing court might have reached a different conclusion if it were deciding the issue de novo. *Id.* In this case, the trial court found that because of the circumstances surrounding the September 28th incident and the recommendation of the guardian ad litem, protective supervision of J.E.D. was in the best interest of J.E.D. Mother and Father did not present any additional evidence during the dispositional hearing. The guardian ad litem submitted her report she completed prior to the hearing and filed on May 3, 2012. The guardian ad litem met and interviewed Mother, Father, paternal grandfather, maternal grandmother, O.S., J.E.D., and J.D., and conducted home visits of Mother, Father, and maternal grandmother. The guardian concluded it was in the best interest of the child to return to Mother's home with an order of protective supervision. Based on the September 28th incident and the report of the guardian ad litem, the trial court's ruling was not unreasonable, arbitrary, or unconscionable. Appellant's first assignment of error is overruled.

{¶32} Based on the foregoing, we find the trial court did not err in finding J.E.D. dependent or by granting an order of protective supervision of J.E.D. to RCCS.

{¶33} Appellant's Assignments of Error I, II, and III are therefore overruled.

{¶34} The judgment of the Richland County Common Pleas Court, Juvenile Division, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. PATRICIA A. DELANEY


WSG:clw 0513

[Cite as *In re J.E.D.*, 2013-Ohio-2186.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT


IN THE MATTER OF: J.E.D.,
ALLEGED DEPENDENT CHILD      :
     :
     :
     :
     :
     :
     :          JUDGMENT ENTRY
     :
     :
     :
     :          CASE NO. 12-CA-107



For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Common Pleas Court, Juvenile Division, is affirmed. Costs to appellant.


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. PATRICIA A. DELANEY