DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Christopher S. ("Christopher") and Tabatha S. ("Tabatha"), have appealed from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their two minor children in the permanent custody of Wayne County Children Services Board ("CSB"). Because the trial court failed to comply with Juv.R. 37(A) and Appellants were unable to correct the record via App.R. 9, this Court reverses and remands for a new hearing.
 I {¶ 2} Christopher and Tabatha are the natural parents of C.S. and J.S. On May 14, 2002, C.S. and J.S. were removed from the home. CSB eventually moved for permanent custody of both children and a hearing on that motion commenced on February 25, 2004. Apparently, there was no court reporter present and the proceedings were recorded via audiotape.
 {¶ 3} The trial court granted the agency's motion and placed C.S. and J.S. in the permanent custody of CSB. Filing separately, Christopher and Tabatha have timely appealed, raising a total of four assignments of error.
 II Tabatha's Assignment or Error Number One
"The court's decision below was contrary to the manifest weight of the evidence as appellee has failed to prove [its] case by clear and convincing evidence and granting the motion for permanent custody constituted an abuse of discretion."
 Tabatha's Assignment or Error Number Two
"The testimony and report of Dr. Marianne Bowden should have been excluded from admission into evidence at trial based upon her failure to disclose the results of the written tests and surveys on which she based her opinion and interfered with her right to cross-examine the witness effectively."
 Tabatha's Assignment or Error Number Three
"The guardian ad litem's report should have been excluded based upon her failure to determine the wishes of the children in making her recommendation as to their best interest[s]."
 Christopher's Assignment or Error Number One
"The court improperly denied parties' request for the production of raw data and opportunity to review same that formulated the basis of [Psychologist] Dr. Bowden's testimony and improperly denied the parties' motion to prohibit Dr. Bowden's testimony in trial."
 {¶ 4} The merits of the assigned errors cannot be reached because the record is inadequate to review them. When this Court attempted to read the transcript of proceedings, it discovered that the court reporter, who had not been present at the proceedings, had transcribed only the audible portions of an audiotape recording of the proceedings. Those audible portions, however, are intertwined with literally thousands of spots marked "inaudible." Although CSB has asserted that the entire proceedings were recorded and that the word "inaudible" that appears throughout the transcript represent only pauses in the testimony, that assertion is not supported by the transcript. It is apparent to this Court from its attempt to read the transcript, and the certification of the court reporter, that the word "inaudible" that appears thousands of times throughout the transcript represents gaps in the recorded testimony, questions, and discussions at the permanent custody hearing.
 {¶ 5} In the first volume of transcript alone, containing a total of 200 pages, only 18 of those pages are without at least one "inaudible" portion. Most pages contain at least two "inaudibles" and some have anywhere from five or six to 12 or 14 points at which the recording was "inaudible." It is not possible to determine whether "inaudible" refers to one or several words that the court reporter was unable to transcribe. Some sentences and witness answers include numerous "inaudibles." Even entire statements of the court or counsel, or entire questions or answers are indicated as "inaudible."
 {¶ 6} A review of the entire transcript reveals that problems with the quality of the recording continued throughout the entire proceeding, as there are portions marked "inaudible" throughout all four volumes of transcript. Given that there are multiple inaudible portions on most pages, there are literally thousands of points during the hearing that were not audibly recorded. The inaudible portions of the hearing are so pervasive that it is impossible for this Court to review the merits of any of the assigned errors.
 {¶ 7} When this Court discovered the inadequate state of the transcript of proceedings, it invoked its authority under App.R. 9(E) and ordered Appellants to "correct the `inaudible' portions of the transcript pursuant to App.R. 9(C) or App.R. 9(D)." Appellants responded and asserted, among other things, that they could not recall what was missing from most points at which the transcript is marked "inaudible." According to Appellants, there are inaudible portions on more than 600 pages of the transcript. They further emphasize that this hearing lasted several days and occurred more than eight months ago. They represent that, although they might be able to fill in some of the gaps, they could not recall enough of the missing portions of the hearing to enable this Court to fully review their challenges. CSB does not assert that it can recall the missing testimony but instead asserts that there is no missing testimony and that the transcript is complete. Clearly, the transcript of proceedings is missing testimony throughout the entire hearing, as well as questions and statements of counsel and the court. This Court accepts Appellants' representation that they cannot fill in all of the gaps in the transcription, given the thousands of inaudible portions scattered throughout the proceedings.
 {¶ 8} Although neither appellant directly assigned error to the adequacy of the record prepared by the trial court, this Court is unable to review the merits of these assigned errors because the transcript of the permanent custody hearing is grossly inadequate and Appellants are not able to fill in the gaps. See, e.g., In re Henderson (Mar. 8, 2001), 8th Dist. No. 76695 (issue was raised by the appellate court because the transcript was inadequate to demonstrate the assigned error.)
 {¶ 9} In most other types of cases, it is solely the appellant's burden to provide this Court with an adequate record to demonstrate error on appeal and this Court presumes regularity in the trial court proceedings when the appellant is unable to do so. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19; see, also, App.R. 10(A) and Loc.R. 5(A). In permanent custody and many other juvenile cases, however, the juvenile court has an affirmative obligation to record the proceedings. Juv.R. 37(A) requires the juvenile court to "make a record of adjudicatory and dispositional proceedings in * * * permanent custody cases[.] * * * The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or videorecording device." In this case, as explained above, the juvenile court failed to comply with Juv.R. 37(A) because the device it used to record the proceedings clearly was not "adequate."
 {¶ 10} In a recent permanent custody appeal from another appellate district, the Ohio Supreme Court addressed the interplay between the recording requirement of Juv.R. 37(A) and the burden of the appellant to provide the appellate court with an adequate record to conduct its appellate review. While recognizing that "Juv.R. 37 places primary responsibility upon the juvenile court to record proceedings in these types of cases" and that it "must take whatever steps are necessary to ensure that it records its proceedings[,]" the court addressed the question of whether the appellant has an obligation "to attempt to correct an insufficient record by using one of the options available under App.R. 9[.]" In re B.E.,102 Ohio St.3d 388, 2004-Ohio-3361, at ¶ 12 and 16.
 {¶ 11} The court was guided by its prior decisions involving the interplay between Crim.R. 22, which also requires the trial court to record certain proceedings, and App.R. 9. In those cases, the court had "recognized that although it is the court's responsibility in the first place to record the proceedings, the appellant, if possible, should attempt to use one of the procedures outlined in App.R. 9 to supplement the record for appeal purposes." Id. at ¶ 15. Consequently, the court held that "when a juvenile court fails to comply with the recording requirements of Juv.R. 37(A) and an appellant attempts but is unable to submit an App.R. 9(C) statement to correct or supplement the record, the matter must be remanded to the juvenile court for a rehearing." Id. at ¶ 16. The court explained that, because the appellant had attempted to fill the gaps in the record but neither trial counsel was able to recall the missing testimony, it was "unwilling to presume the validity of the juvenile court's proceedings[.] * * * Otherwise, we would be penalizing an appellant for the court's inability to comply with an established court rule in the first place." Id.
 {¶ 12} This Court is faced with a very similar situation here. In fact, it is not just one portion of testimony that is missing from this record, as was the situation before the Ohio Supreme Court, but instead this record has thousands of gaps scattered throughout the entire hearing. The audiotape recording device in this case was clearly an inadequate means of recording the proceedings. Having attempted to review the transcript in this case, this Court is unable to imagine how the parties could possibly remember all that is missing from the thousands of points in the transcript indicated as "inaudible."
 {¶ 13} It has come to the attention of this Court that other juvenile courts in this district also have been using audiotape as the means of recording permanent custody hearings. Given the serious nature of these proceedings and the fact that many, if not all, of these cases are appealed, this Court must echo the admonishment of the Ohio Supreme Court that juvenile courts "take seriously their obligation to ensure that these types of proceedings are recorded properly." Id at ¶ 17.
"Obviously, it is in the court's best interest to properly record its proceedings the first time around, preferably through the use of a court stenographer. * * * `The minimal effort needed to comply with [Juv.R. 37(A)] is far outweighed by the expense, in time and taxpayer money, of retrying a [permanent custody] case.'" Id., quoting State v. Brewer (1990), 48 Ohio St.3d 50,61.
 {¶ 14} Moreover, this Court would also emphasize that the consideration of wasted time is particularly significant in a permanent custody case. Permanent custody proceedings have been expedited both at the trial court and appellate court levels to avoid unnecessary delay in the lives of the children at issue. A huge delay has been caused in this case simply due to the absence of a court reporter at the permanent custody hearing.
 {¶ 15} The assignments of error cannot be addressed on their merits due to an inadequate record.
 III {¶ 16} The assignments of error will not be addressed due to the juvenile court's failure to comply with Juv.R. 37(A) and prepare an adequate record. Because Appellants were unable to fill in the gaps in the record pursuant to App.R. 9, the case must be reversed and the cause remanded for a new hearing.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Carr, P.J., Boyle, J., Concur.