[Cite as *In re S.L.*, 2016-Ohio-5000.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

IN RE:

    S.L.,                                                    CASE NO.  14-15-07

ADJUDGED ABUSED AND
DEPENDENT CHILD.

                                     **O P I N I O N**

[ERICA SKAGGS - APPELLANT]

IN RE:

    A.L.,                                                    CASE NO.  14-15-08

ADJUDGED DEPENDENT CHILD.

                                       **O P I N I O N**

[ERICA SKAGGS - APPELLANT]

---

**Appeals from Union County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 21530001 and 21530002**

**Judgment in Case No. 14-15-07 Affirmed in Part and Reversed in Part;**
**Judgment in Case No. 14-15-08 Reversed; Causes Remanded**

**Date of Decision:   July 18, 2016**

---

**APPEARANCES:**

    *Robert C. Petty* **for Appellant, Erica Skaggs**

    *Ashley L. Johns* **for Appellee**

**PRESTON, J.**

{¶1} Appellant, Erica Skaggs ("Erica"), appeals the April 8, 2015 judgment entries of disposition of the Union County Court of Common Pleas, Juvenile Division. On appeal, Erica challenges the trial court's March 18, 2015 judgment entries adjudicating: (1) Erica's child, S.L., an abused child under R.C. 2151.031(A) and a dependent child under R.C. 2151.04(C); and (2) Erica's child, A.L., a dependent child under R.C. 2151.04(C) and (D). For the reasons that follow, we reverse in part and affirm in part the judgment in Case No. 14-15-07 and reverse the judgment in Case No. 14-15-08.

{¶2} On January 7, 2015, appellee, the Union County Department of Job and Family Services ("Agency"), filed a complaint alleging that S.L. is an abused child under R.C. 2151.031(A) and a dependent child under R.C. 2151.04(C). (Case No. 21530001, Doc. No. 1). The Agency also filed a complaint alleging that A.L. is a dependent child under R.C. 2151.04(C) and (D). (Case No. 21530002, Doc. No. 1). The complaints allege that S.L. and A.L. are the children of Erica and Scott E. Lippencott ("Scott"). (*Id.*); (*Id.*). Erica is married to Joel Skaggs ("Joel"), and they have two children, L.S. and B.S., together. (*Id.*); (*Id.*). Joel is a stepfather to S.L. and A.L. (*Id.*); (*Id.*). According to the complaints, on November 15, 2014, the Agency "received a report of domestic violence and sexual abuse." (*Id.*); (*Id.*). The complaints allege that law enforcement learned

during their investigation that Joel "had been inappropriately touching" S.L. (*Id.*); (*Id.*). According to the complaints, the Agency initially "believed that Erica was appropriately protecting" the children because she obtained an ex parte civil protection order on November 21, 2014, barring Joel from having contact with Erica and the four children. (*Id.*); (*Id.*). The complaints allege, however, that Erica petitioned on December 23, 2014 to have the civil protection order dismissed. (*Id.*); (*Id.*). The complaints continue, "[T]he Agency has concerns about the safety of all the children in the presence of [Joel] based on the history of domestic violence coupled with the sexual abuse of [S.L.]." (*Id.*); (*Id.*).

{¶3} Also on January 7, 2015, the Agency filed motions for temporary orders. (Case No. 21530001, Doc. No. 2); (Case No. 21530002, Doc. No. 2). The trial court issued ex parte orders that day, ordering that Joel have no contact or parenting time with S.L. and A.L. and that Joel vacate the residence.[1] (Case No. 21530001, Doc. No. 9); (Case No. 21530002, Doc. No. 9). The next day, the trial court issued temporary orders of shelter care, with the January 7, 2015 ex parte orders remaining in effect. (Case No. 21530001, Doc. No. 15); (Case No. 21530002, Doc. No. 15). The trial court issued additional temporary orders on February 4, 2015, granting temporary custody of S.L. to Scott, ordering that Erica retain custody of A.L., and granting the Agency temporary protective supervision

---

[1] At the time the trial court issued the ex parte orders on January 7, 2015, A.L., L.S., and B.S. were residing in the residence occupied by Erica and Joel. (*See* Case No. 21530001, Doc. No. 9); (Case No. 21530002, Doc. No. 9). S.L. was "stay[ing] with a relative in a county contiguous to Union County." (*See id.*); (*Id.*).

over both children. (Case No. 21530001, Doc. No. 40); (Case No. 21530002, Doc. No. 38).

{¶4} On March 16 and 18, 2015, the trial court held an adjudicatory hearing. (Mar. 16, 2015 Tr. at 4-5); (Mar. 18, 2015 Tr. at 6). (*See also* Case No. 21530001, Doc. No. 65); (Case No. 21530002, Doc. No. 63). At the conclusion of the hearing, the trial court adjudicated S.L. an abused and dependent child under R.C. 2151.031(A) and 2151.04(C), respectively, and A.L. a dependent child under R.C. 2151.04(C) and (D). (Mar. 18, 2015 Tr. at 48). (*See also* Case No. 21530001, Doc. No. 65); (Case No. 21530002, Doc. No. 63). On the day the adjudicatory hearing concluded, the trial court filed its judgment entries reflecting these adjudications. (Case No. 21530001, Doc. No. 65); (Case No. 21530002, Doc. No. 63).

{¶5} The trial court held a dispositional hearing on March 26, 2015. (Mar. 26, 2015 Tr. at 4). (*See also* Case No. 21530001, Doc. No. 73); (Case No. 21530002, Doc. No. 71). At the conclusion of the dispositional hearing, the trial court ordered that Scott have legal and physical custody of S.L. and that Erica have legal and physical custody of A.L., with the Agency having continued protective supervision over both children. (Mar. 26, 2015 Tr. at 74). (*See also* Case No. 21530001, Doc. No. 73); (Case No. 21530002, Doc. No. 71). On April

8, 2015, the trial court filed its judgment entries reflecting the dispositions. (Case No. 21530001, Doc. No. 73); (Case No. 21530002, Doc. No. 71).

{¶6} On May 4, 2015, Erica filed her notices of appeal. (Case No. 21530001, Doc. No. 87); (Case No. 21530002, Doc. No. 84). She raises eight assignments of error for our review. We will address her assignments of error in the following order: seventh; fourth; first, second, and third together; fifth; eighth; and sixth.

**Assignment of Error No. VII**

**The Court Erred as a Matter of Law by Failing to Make Findings of Fact and Conclusions of Law in Accordance with R.C. § 2151.28(L).**

{¶7} In her seventh assignment of error, Erica argues that the trial court failed to comply with R.C. 2151.28(L), which requires that, if the trial court determines that a child is a dependent child, the trial court incorporate that determination into written findings of fact and conclusions of law.

R.C. 2151.28(L) provides:

If the court, at an adjudicatory hearing held pursuant to division (A) of this section upon a complaint alleging that a child is an abused, neglected, dependent, delinquent, or unruly child or a juvenile traffic offender, determines that the child is a dependent child, the court shall incorporate that determination into written findings of fact and

conclusions of law and enter those findings of fact and conclusions of law in the record of the case. The court shall include in those findings of fact and conclusions of law specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child.

See In re A.B.C., 5th Dist. Stark No. 2010CA00087, 2011-Ohio-531, ¶ 27. By its plain language, R.C. 2151.28(L) does not apply to adjudications of abuse or neglect. See In re J.H., 5th Dist. Tuscarawas No. 2012 AP 10 0062, 2013-Ohio-1423, ¶ 42.

{¶8} In this case, as the Agency concedes, the trial court did not comply with R.C. 2151.28(L) as to its determinations that S.L. and A.L. are dependent children. Its judgment entries contain no findings of fact on which it based its dependency determinations. Rather, the judgment entries simply state:

Thereupon, the court proceeded to hear testimony as to the facts and circumstances of this matter. Upon evidence presented, the Court FINDS by clear and convincing evidence that [S.L.] is an abused child pursuant to R.C. 2151.031 (A) and a dependent child pursuant to R.C. 2151.04 (C); and [A.L.] is a dependent child pursuant to R.C. 2151.04 (C) and (D).

(Emphasis sic.) (Case No. 21530001, Doc. No. 65); (Case No. 21530002, Doc. No. 63). We hold that this recitation fails to satisfy the requirement of R.C. 2151.28(L) that the trial court make "findings of fact and conclusions of law," including "specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child." *See In re A.B.C.* at ¶ 25-29; *In re S.W.*, 12th Dist. Butler Nos. CA2006-09-211 and CA2006-10-263, 2008-Ohio-1194, ¶ 7-12, 16.

{¶9} We sustain Erica's seventh assignment of error and, in doing so, reverse the judgment of the trial court to the extent it determined that S.L. is a dependent child under R.C. 2151.04(C) and that A.L. is a dependent child under R.C. 2151.04(C) and (D). We remand these cases to the trial court to make written findings of fact and conclusions of law that comply with R.C. 2151.28(L). *See In re S.W.* at ¶ 16.

**Assignment of Error No. IV**

**The Court Erred in Finding A.L. be [sic] Dependent Pursuant to R.C. § 2151.04(D) When No Child Had Been So Adjudicated Prior to the Time of the Filing of the Complaints.**

{¶10} In her fourth assignment of error, Erica argues that "the determination as to whether a child is dependent must be made as of the date alleged in the complaint, not as of the date of the adjudicatory hearing." (Appellant's Brief at 13). Erica argues that "[t]here was no evidence submitted at

the adjudication hearing that a child in the household was an abused child" at the time the complaints were filed or even before March 18, 2015—the day on which the trial court adjudicated S.L. abused and dependent and A.L. dependent.

{¶11} The party seeking the adjudication bears the burden of establishing dependency by clear and convincing evidence. *In re M.H.*, 9th Dist. Wayne No. 09CA0028, 2009-Ohio-6911, ¶ 17; *In re Savchuk Children*, 180 Ohio App.3d 349, 2008-Ohio-6877, ¶ 33 (11th Dist.); *In re D.W.*, 4th Dist. Athens No. 06CA42, 2007-Ohio-2552, ¶ 18. A trial court's determination that a child is dependent under R.C. 2151.04 must be supported by clear and convincing evidence. *In re B.B.*, 2012-Ohio-2695, at ¶ 32, citing R.C. 2151.35. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "[W]hen 'the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Freed Children*, 3d Dist. Hancock No. 5-08-37, 2009-Ohio-996, ¶ 26, quoting *Cross* at 477. Therefore, we are required to determine whether the trial court's determination is supported by sufficient evidence to satisfy the clear-and-

convincing-evidence degree of proof. *In re B.B.* at ¶ 33, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

**{¶12}** The trial court adjudicated A.L. dependent under R.C. 2151.04(C) and (D). (Case No. 21530002, Doc. No. 63). Under this assignment of error, however, Erica challenges the trial court's adjudication only under R.C. 2151.04(D). Therefore, we need address only the trial court's adjudication of A.L. as dependent under R.C. 2151.04(D). *See In re D.P.*, 10th Dist. Franklin No. 12AP-557, 2013-Ohio-177, ¶ 8.

R.C. 2151.04 provides:

As used in this chapter, "dependent child" means any child:

* *

(D) To whom both of the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or

neglected by that parent, guardian, custodian, or member of the household.

R.C. 2151.04(D). *See In re B.B.*, 3d Dist. Defiance No. 4-10-17, 2012-Ohio-2695, ¶ 26. A juvenile court has exclusive original jurisdiction "[c]oncerning any child who on or about the date specified in the complaint * * * is alleged * * * to be a * * * dependent child * * *." R.C. 2151.23(A)(1). Accordingly, the trial court must determine whether the child was dependent as of the date alleged in the complaint, not as of the date of the adjudicatory hearing. *In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134, ¶ 8 (6th Dist.), citing R.C. 2151.23(A)(1).

{¶13} The Agency does not dispute that on either November 15, 2014 or the date the complaints were filed—January 7, 2015—there was no adjudication that a sibling of or other child residing with S.L. and A.L. was abused, neglected, or dependent based on an act of a parent or other member of the household. *See* R.C. 2151.04(D)(1). Accordingly, Erica's fourth assignment of error presents the following issue: whether R.C. 2151.04(D) can serve as the basis for an adjudication of dependency notwithstanding the absence—as of the filing of the complaint—of an adjudication of a sibling or other child in the household as abused, neglected, or dependent based on an act of a parent or other household member. This question appears to be one of first impression in Ohio.

{¶14} Erica argues that "the determination as to whether a child is dependent must be made as of the date alleged in the complaint" and that, under R.C. 2151.04(D), the adjudication of abuse, neglect, or dependency must have occurred before the filing of the complaint. (Appellant's Brief at 7). The Agency on appeal argues that the purpose of the juvenile court system is to provide for the care, protection, and mental and physical development of children and that "courts are not required to wait for harm to befall a child before acting." (Appellee's Brief at 9). For that reason, the Agency argues, it should be allowed to pursue simultaneous adjudications of the child alleged to be dependent under R.C. 2151.04(D) and of a "sibling of the child or any other child who resides in the household." R.C. 2151.04(D)(1).

{¶15} To answer the question presented under this assignment of error, we must determine whether R.C. 2151.04(D)(1) is ambiguous. "The principles of statutory construction require courts to first look at the specific language contained in the statute, and, if the language is unambiguous, to then apply the clear meaning of the words used." *Roxane Laboratories, Inc. v. Tracy*, 75 Ohio St.3d 125, 127 (1996), citing *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106 (1973). "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be

construed accordingly." R.C. 1.42. "Statutes that are plain and unambiguous must be applied as written without further interpretation." *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, ¶ 12, citing *Lake Hosp. Sys. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524 (1994). That is, "'where the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom.'" *Sherwin-Williams Co. v. Dayton Freight Lines, Inc.*, 112 Ohio St.3d 52, 2006-Ohio-6498, ¶ 14, quoting *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 14.

{¶16} We hold that R.C. 2151.04(D)(1) is unambiguous concerning the issue presented under Erica's fourth assignment of error. To satisfy the definition of dependency under R.C. 2151.04(D), the child must reside in a household in which a parent or other member of the household "committed an act that was the basis for an adjudication" that a sibling or any other child residing in the household is an abused, neglected, or dependent child. R.C. 2151.04(D)(1). The word "adjudication" in this context of R.C. Chapter 2151 has a particular meaning. An "adjudicatory hearing" is a hearing at which a trial court determines whether a child is abused, neglected, or dependent. *See* R.C. 2151.28(B) and 2151.35(B)(1). *See also* Juv.R. 2(B) (defining "adjudicatory hearing" as "a hearing to determine whether a child is a juvenile traffic offender, delinquent, unruly, *abused*,

*neglected*, or *dependent* or otherwise within the jurisdiction of the court" (emphasis added)). A trial court's determination under R.C. Chapter 2151 that a child is abused, neglected, or dependent constitutes an "adjudication." *See* R.C. 2151.28(B) and 2151.35(B)(1). *See also In re Baby Girl Baxter*, 17 Ohio St.3d 229, 233 (1985), quoting Juv.R. 29(F)(2)(a); *In re A.J.*, 10th Dist. Franklin No. 14AP-284, 2014-Ohio-5046, ¶ 26.

{¶17} R.C. 2151.04(D)(1) refers to "an act that *was the basis* for an adjudication." (Emphasis added.) The General Assembly chose the word "was," which is a past-tense verb. *State v. Johnson*, 4th Dist. Scioto No. 07CA3158, 2008-Ohio-1369, ¶ 18. "The past tense indicates action already completed." *State v. Halpin*, 2d Dist. Clark No. 07CA78, 2008-Ohio-4136, ¶ 24. In the context of R.C. 2151.04(D)(1), saying that an act *was the basis* of an adjudication requires there to have been a past adjudication. In other words, for an act to have been the basis for an adjudication, there must have been a prior adjudication that a sibling or other child residing in the household is an abused, neglected, or dependent child. *See In re M.P.*, 2d Dist. Greene No. 2011 CA 71, 2012-Ohio-2334, ¶ 15 (concerning R.C. 3109.04, the statute governing the allocation of parental rights and responsibilities in domestic-relations cases, "[t]he use of the past tense by the General Assembly means that a modification may be ordered only after a move from the state has already occurred"). Had the General Assembly intended to

allow simultaneous adjudications—as the Agency argues—it would have used present-tense, not past-tense, language. *See Lucas Cty. Commrs. v. Pub. Utilities Com'n of Ohio*, 80 Ohio St.3d 344, 347 (1997). Accordingly, because, under R.C. 2151.23(A)(1), the determination of dependency is made as of the date alleged in the complaint, the plain and unambiguous language of R.C. 2151.04(D)(1) requires that "a sibling of the child or any other child who resides in the household" be adjudicated abused, neglected, or dependent before the complaint is filed.

{¶18} The Agency acknowledges that this issue appears to be one of first impression in Ohio. Nevertheless, the Agency cites in support of its argument cases in which it appears that there may have been no prior adjudications of abuse, neglect, or dependency at the time the complaints were filed in those cases. (Appellee's Brief at 4, citing *In re Rossantelli*, 5th Dist. Delaware No. 01CAF12072, 2002 WL 999301, *1 (May 13, 2002); *In re Yeager/Reardon Children*, 5th Dist. Tuscarawas No. 2001 AP 03 0024, 2002 WL 253815, *1 (Feb. 20, 2002); *In re Atkins*, 7th Dist. Carroll Nos. 705 and 706, 2001 WL 275193, *1 (Mar. 7, 2001); *In Matter of Surfer*, 10th Dist. Franklin No. 97APF09-1158, 1998 WL 231012, *4 (May 7, 1998); *In re J.D.*, 5th Dist. Richland No. 12-CA-108, 2013-Ohio-2187, ¶ 26). However, as the Agency concedes, the issue presented under Erica's fourth assignment of error was not an issue in those appeals, and

those opinions lack analysis of the issue. What is more, at least two of the cases cited by the Agency involved dependency determinations under multiple subsections of R.C. 2151.04—not R.C. 2151.04(D) alone. *See In re Rossantelli* at *1; *In re J.D.* at ¶ 20.

{¶19} Just as the Agency cites cases in support of its proposition that a simultaneous adjudication has been pursued successfully in other districts, dicta from other cases is consistent with our conclusion that R.C. 2151.04(D)(1) requires an adjudication predating the filing of the complaint. *See In re B.B.*, 2012-Ohio-2695, at ¶ 27 (stating that R.C. 2151.04(D) "expressly considers the parent's conduct regarding *prior dependencies*" (emphasis added)); *State ex rel. Swanson v. Hague*, 11th Dist. Ashtabula No. 2009-A-0053, 2010-Ohio-4200, ¶ 27, fn. 1 (noting that, for R.C. 2151.04(D) to apply, "the child in question must have a sibling who *has already been* adjudicated as a neglected, abused or dependent child" (emphasis added)); *In re T.P.-M.*, 9th Dist. Summit No. 24199, 2008-Ohio-6437, ¶ 15 ("R.C. 2151.04(D) * * * requires that a member of the child's present household committed an act that was the basis of the *prior* adjudication." (Emphasis added.)); *In re W.C.*, 9th Dist. Summit No. 22356, 2005-Ohio-2968, ¶ 18 ("[W]ith the addition of R.C. 2151.04(D), the legislature considered a parent's *prior* history with a child welfare agency significant in regard to a determination that a subsequent child might be dependent." (Emphasis added.)).

{¶20} For the reasons above, we conclude that, for a child to be found dependent under R.C. 2151.04(D), R.C. 2151.04(D)(1) plainly and unambiguously requires that a sibling of the child or any other child who resides in the household be adjudicated abused, neglected, or dependent before the complaint is filed. In A.L.'s case, Erica is correct that no evidence was presented at trial that a sibling of A.L. or any other child residing in the household was adjudicated abused, neglected, or dependent before the complaint was filed on January 7, 2015. Rather, the Agency points out that the trial court adjudicated S.L. abused on March 18, 2015, "in the same hearing that it found A.L. dependent pursuant to R.C[.] 2151.04(D)." (Appellee's Brief at 9). The Agency argues that the trial court properly based its dependency adjudication of A.L. on the simultaneous March 18, 2015 adjudication of S.L. The Agency's position is contrary to the plain and unambiguous language of R.C. 2151.04(D) and erroneous. Accordingly, the Agency failed to prove by clear and convincing evidence that "a parent, guardian, custodian, or other member of the household committed an act that *was the basis for an adjudication* that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child." (Emphasis added.) R.C. 2151.04(D)(1). Therefore, the trial court's adjudication of A.L. as

dependent under R.C. 2151.03(D) is not supported by sufficient evidence to satisfy the clear-and-convincing-evidence degree of proof.[2]

**{¶21}** Erica's fourth assignment of error is sustained.

### Assignment of Error No. I

**The Court Erred in Allowing the Testimony of Jennifer Westgate Regarding Hearsay Statements Made to Her by S.L.**

### Assignment of Error No. II

**The Court Erred in Allowing the Testimony of Alonna Watkins Regarding Hearsay Statements Made to Her by Either S.L. or E.S.**

### Assignment of Error No. III

**The Court Erred in Admitting an Unredacted Recording of the Testimony of E.S. in the Ex Parte Hearing of November 24, 2014 Including Hearsay Statements Made to Her by S.L.**

**{¶22}** In her first, second, and third assignments of error, Erica argues that the trial court abused its discretion by admitting certain evidence at the adjudicatory hearing. Specifically, she argues that the trial court improperly allowed the hearsay testimony of a Child Advocacy Center social worker and an Agency intake investigator and the admission of a video recording of a hearing in another case in which Erica requested an ex parte civil protection order.

---

[2] For a child to be dependent under R.C. 2151.04(D), both subsections—R.C. 2151.04(D)(1) and (2)—must apply. *See* R.C. 2151.04(D). Based on our conclusion that the Agency failed to clearly and convincingly prove R.C. 2151.04(D)(1), we need not and do not consider R.C. 2151.04(D)(2). *See In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 20 (9th Dist.).

**{¶23}** Adjudicatory hearings require strict adherence to the Rules of Evidence. *In re Beebe*, 3d Dist. Allen No. 1-02-84, 2003-Ohio-1888, ¶ 10, citing *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 233 (1985). "Accordingly, hearsay is not admissible in an adjudicatory hearing unless the statement falls within a recognized exception to the hearsay rule." *In re O.H.*, 9th Dist. Summit No. 25761, 2011-Ohio-5632, ¶ 21, citing Evid.R. 802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Under Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence." *Secy. of Veterans Affairs v. Leonhardt*, 3d Dist. Crawford No. 3-14-04, 2015-Ohio-931, ¶ 40.

**{¶24}** "The trial court has broad discretion concerning the admissibility of evidence." *Id.* at ¶ 39, citing *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. "A decision to admit or exclude evidence will be upheld absent an abuse of discretion." *Beard* at ¶ 20, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of

the adverse party or is inconsistent with substantial justice." *Beard* at ¶ 20, citing *O'Brien* at 164-165.

{¶25} First, Erica argues that the trial court abused its discretion by allowing Jennifer Westgate ("Westgate"), a social worker employed at the Child Advocacy Center at Children's Hospital, to testify to statements S.L. made to her. (Mar. 18, 2015 Tr. at 9). The Agency concedes that this testimony by Westgate is hearsay, but it argues that the trial court properly allowed the testimony under Evid.R. 803(4), the hearsay exception for statements for purposes of medical diagnosis or treatment.

Evid.R. 803(4) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

In *State v. Dever*, the Supreme Court of Ohio held, "Statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made

for purpose of diagnosis [or] treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule." 64 Ohio St.3d 401 (1992), paragraph two of the syllabus. "The salient inquiry is whether the child's statements were made for purposes of diagnosis [or] treatment rather than for some other purpose." *State v. Gutierrez*, 3d Dist. Hancock No. 5-10-14, 2011-Ohio-3126, ¶ 52, citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 47. "Hearsay statements made to a social worker may be admissible *if* they are made for purposes of medical diagnosis or treatment." (Emphasis sic.) *State v. Goings*, 3d Dist. Logan No. 8-11-03, 2012-Ohio-1793, ¶ 19, citing *Muttart* at ¶ 15, 56, *State v. Chappell*, 97 Ohio App.3d 515, 530-531 (8th Dist.1994), and *State v. Reigle*, 3d Dist. Hancock No. 5-2000-14, 2000 WL 1682520, *8-10 (Nov. 9, 2000).

{¶26} As we explained in *In re Weatherholt*,

The question of whether a social worker should be permitted to testify pursuant to Evid.R. 803(4) depends upon the functions of the witness. If the social worker encountered the victim for the purpose of diagnosis or treatment, then the evidence may be admissible. However, if the statement was made during the course of a fact-finding or investigatory procedure, Evid.R. 803(4) is not applicable.

3d Dist. Seneca No. 13-99-31, 2000 WL 126662, *5 (Feb. 4, 2000), citing *Chappell* at 531, 534. In other words, "a court must look to the function of the

particular social worker to determine whether or not it was permissible for the social worker to testify concerning statements under Evid.R. 803(4)." *In re M.E.G.*, 10th Dist. Franklin No. 06AP-1256, 2007-Ohio-4308, ¶ 27, citing *State v. Edinger*, 10th Dist. Franklin No. 05AP-31, 2006-Ohio-1527, ¶ 62. "The trial court's consideration of the purpose of the child's statements will depend on the facts of the particular case." *Goings* at ¶ 20, citing *Muttart* at ¶ 49. "'At a minimum, * * * a nonexhaustive list of considerations includes [:]' (1) whether the child was questioned in a leading or suggestive manner; (2) whether a motive to fabricate, such as a custody battle, existed; (3) whether the child understood the need to tell medical personnel the truth; (4) the child's age; and (5) the consistency of the child's declarations." *Id.*, quoting *Muttart* at ¶ 49 and citing *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, ¶ 7 (1st Dist.).

**{¶27}** At the adjudicatory hearing, Westgate explained that, in her position, she acts either as a forensic interviewer or a health advocate:

[Agency Counsel]: And what are your duties in that capacity?

[Westgate]: So if I am in the role of a forensic interviewer, what I will do is interview children when there are concerns or allegations for physical or sexual abuse. If I'm a health advocate (INAUDIBLE), my job would be to conduct a

separate social interview with the care giver during the course of the interview, provide mental health recommendations, be part of the (INAUDIBLE).

[Agency Counsel]: And are you ever involved in both of those capacities or are you usually just one or the other?

[Westgate]: One or the other on any given case.

(Mar. 18, 2015 Tr. at 9-10). Westgate described the procedure that alleged child victims encounter at the Child Advocacy Center. (*Id.* at 10-13). Westgate then testified to statements S.L. made to her regarding instances in which Joel sexually abused her. (*Id.* at 16-19). In overruling Erica's counsel's objection to the hearsay, the trial court stated, "It's a statement for purposes of medical diagnosis and treatment." (*Id.* at 16). When the Agency's counsel asked Westgate what she did with the information S.L. told her, Westgate responded,

So that information was shared with the multi-disciplinary team which included the medical professional [sic], on the case, I believe was Dr. Brink and Dr. Ruth. And then they went from [sic] their exam. We also made some recommendations for mental health services. I believe that in my report and also in another health

advocate's report we reported that [S.L.] should get child abuse therapy.

(*Id.* at 19-20).

{¶28} Erica argues, "There is no testimony regarding the circumstances under which S.L. made the statements which Ms. Westgate repeated to the court." (Appellant's Brief at 9). We disagree. We can discern from the context of the entirety of Westgate's testimony why the trial court concluded that the Evid.R. 803(4) hearsay exception applies to Westgate's testimony. Although Westgate never explicitly stated that she acted as a health advocate—as opposed to a forensic interviewer—in the case of S.L., she stated that she shared the information from S.L. with a "multi-disciplinary team which included the medical professional" and "made some recommendations for mental health services." (Mar. 18, 2015 Tr. at 19-20). This aligns with Westgate's earlier testimony concerning her role when acting as a health advocate, as opposed to a forensic interviewer. (*See id.* at 9-10). In addition, Westgate is a social worker employed by the Child Advocacy Center at Children's Hospital, as opposed to being employed by the county. *See State v. Edinger*, 10th Dist. Franklin No. 05AP-31, 2006-Ohio-1527, ¶ 63.

{¶29} Ohio courts have concluded that a social worker acting in this type of role may testify under Evid.R. 803(4) to the victim's out-of-court statements. *See*

*In re M.E.G.*, 2007-Ohio-4308, at ¶ 27-29 ("After the interview, [the social worker] verbally communicated the information to [the medical doctor] 'to make sure he had all the information he needed for his medical diagnosis and treatment' and to the mental health advocate and children's services professionals who were present."); *State v. Bowers*, 1st Dist. Hamilton No. C-150024, 2016-Ohio-904, ¶ 23-24 ("Especially after [the child victim] revealed allegations of vaginal rape in the shower, the questions asked by the social worker were clearly asked to assess her medical safety, and [the child victim] underwent a physical examination after the interview."); *State v. Jones*, 8th Dist. Cuyahoga No. 83481, 2004-Ohio-5205, ¶ 28 ("[P]rior to [the social worker] testifying about the victim's statements, the State properly laid a foundation that [the social worker] was acting as part of a medical team when taking the victim's statements and that her interview was an integral part of the medical examination.").

{¶30} Nothing in the nonexhaustive list of reliability considerations set forth in *Muttart* indicates that S.L.'s statements are unreliable. First, there is no indication that Westgate questioned S.L. in a leading manner. *See State v. Tebelman*, 3d Dist. Putnam No. 12-09-01, 2010-Ohio-481, ¶ 42. To the contrary, Westgate testified, "So we would typically ask open-ended questions depending on the age of the child and where they're at in their disclosure process." (Mar. 18, 2015 Tr. at 11). Second, as Erica points out in her brief, "There is no indication of

-24-

what S.L.'s motivation was in making the statement." (Appellant's Brief at 9). *See Tebelman* at ¶ 42. Third, it appears from the record that Westgate impresses on the children she interviews the need to tell the truth. (*See* Mar. 18, 2015 Tr. at 11). Fourth, at the time S.L. presented at the Child Advocacy Center, she was 15 years old. (*Id.* at 16). Finally, although Westgate declined to testify to S.L.'s "veracity one way or the other," Westgate testified that S.L. "gave history consistent with sexual abuse." (*Id.* at 24). Moreover, nothing in S.L.'s actions or responses made Westgate question whether S.L. was telling the truth. (*Id.*).

{¶31} Erica relies heavily on *Reigle* in support of her argument that Westgate's testimony is not admissible under Evid.R. 803(4). *Reigle* is distinguishable from this case. In that case, this court concluded that statements made to a social worker did not qualify as statements made for purposes of medical diagnosis or treatment under Evid.R. 803(4). *Reigle*, 2000 WL 1682520, at *9. Unlike Westgate, who is a hospital employee, the social worker in *Reigle* was "employed by the Hancock County Department of Human Services." *Id.* Also unlike Westgate, the social worker in that case made "references numerous times" "[t]hroughout her testimony" "to her job as a 'risk assessor' and 'investigator.'" *Id.* The social worker in *Reigle* "constantly refer[red] to her contact with the two victims * * * as an 'investigation.'" *Id.* She also "testified that her office was affiliated with the police department and the sheriff's

department and at the appropriate time during the 'investigation' the police are notified." *Id.* While Westgate, like the social worker in *Reigle*, did not diagnose or treat the victim, her purpose as a health advocate was to report to the medical team and make recommendations. On the other hand, the social worker in *Reigle* was engaged in a fact-finding investigation and happened to "eventually recommend treatment." *Id.* In short, *Reigle* is distinguishable and not controlling in this case.

**{¶32}** For the reasons above, we conclude that the trial court did not abuse its discretion in allowing Westgate's testimony under Evid.R. 803(4).

**{¶33}** Erica next argues that the trial court abused its discretion in allowing testimony of an intake investigator for the Agency, Alonna Watkins ("Watkins"). Watkins testified concerning her involvement when a detective interviewed S.L. at the police station:

[Agency Counsel]: And with regard to you – you got two reports then. One was about (INAUDIBLE). Did you speak to Miss Skaggs about the sexual abuse allegation?

[Watkins]: Yes, I did. After the Child Advocacy Center appointment was done, the Detective wanted to meet with her and [S.L.] again. So they went to

-26-

the police station and Detective Kleiber requested that I be there as well. So I was a part of all those conversations. And (INAUDIBLE) talked about sexual abuse of [S.L.] by Scott. I'm sorry. (INAUDIBLE) sorry. Joel. My apologies. And talking about how the abuse started about the time she was 13.

(Mar. 16, 2015 Tr. at 22-23). At that point, Erica's counsel made a hearsay objection, arguing that Watkins was "retelling statements of [S.L.] pertaining to the interviews which again are being offered for the truth of the matter asserted." (*Id.* at 23). The trial court overruled the objection, stating, "At this point in time she hasn't said, [S.L.] said this. * * * And we don't know whether that came from her knowledge of it or the child's statement." (*Id.*).

{¶34} As the trial court suggested, it is unclear whether Erica or S.L. made the out-of-court statements to which Watkins testified. We assume without deciding that Watkins's testimony was improper hearsay evidence and that the trial court abused its discretion by admitting it. "'[T]he erroneous admission or exclusion of hearsay, cumulative to properly admitted testimony, constitutes harmless error.'" *In re H.D.D.*, 10th Dist. Franklin Nos. 12AP-134, 12AP-135, 12AP-136, 12AP-137, 12AP-146, 12AP-147, 12AP-148, 12AP-149, 2012-Ohio-

6160, ¶ 45, quoting *State v. Hogg*, 10th Dist. Franklin No. 11AP-50, 2011-Ohio-6454, ¶ 46. *See also In re J.T.*, 3d Dist. Seneca No. 13-07-31, 2008-Ohio-1650, ¶ 25-27, citing Civ.R. 61.

{¶35} The purportedly improper hearsay testimony of Watkins is cumulative to Westgate's admissible testimony. As we previously discussed, Westgate properly testified to statements S.L. made to her regarding instances in which Joel sexually abused her. (Mar. 18, 2015 Tr. at 16-19). Concerning S.L.'s age at the time the abuse began, Westgate testified that S.L. told her that "it's been going on for three years." (*Id.* at 16). At the time Westgate spoke with S.L., S.L. was 15 years old. (*Id.*). Therefore, Watkins's testimony concerning Joel sexually abusing S.L. and concerning S.L.'s age at the time of the abuse was cumulative to Westgate's properly admitted testimony. Accordingly, we conclude that, even assuming the trial court abused its discretion in admitting Watkins's testimony, the admission of that testimony was harmless error. *See In re H.D.D.* at ¶ 45-46; *In re C.E.*, 3d Dist. Marion No. 9-10-32, 2010-Ohio-4410, ¶ 41; *In re Davis*, 3d Dist. Allen No. 1-2000-69, 2000 WL 1783571, *4 (Dec. 6, 2000). *See also In re J.T.* at ¶ 27, citing Civ.R. 61.

{¶36} Finally, Erica argues that the trial court improperly admitted an unredacted version of the video recording of a hearing concerning Erica's request in the Union County Court of Common Pleas for an ex parte civil protection order.

When the Agency introduced the unredacted video of the ex-parte-civil-protection-order hearing, Erica's counsel objected to the admission of Erica's statements in the video in which she recites statements S.L. made to her. (Mar. 16, 2015 Tr. at 17). Erica's counsel asked that those statements "be redacted and not admitted." (*Id.*). The Agency argued, as it does on appeal, that Erica's recitation of S.L.'s statements are not hearsay because they were offered "to provide context to [Erica's] state of mind" rather than for the truth of the matter asserted. (Appellee's Brief at 6). The trial court overruled the objection without explanation, and the video was played in its entirety. (Mar. 16, 2015 Tr. at 18, 38). However, at the time the Agency moved for the admission of the unredacted video into evidence, Erica's counsel did not object to its admission and instead stated, "I have no objection to any of [the State's] exhibits. * * * Again, no objections to the admission of any of the State's (INAUDIBLE)." (Mar. 18, 2015 Tr. at 30).

{¶37} "Generally, when a party fails to renew an objection at the time exhibits are admitted into evidence, that party waives the ability to raise the admission as error on appeal, unless plain error is shown." *Odita v. Phillips*, 10th Dist. Franklin No. 09AP-1172, 2010-Ohio-4321, ¶ 56, citing *Nicula v. Nicula*, 8th Dist. Cuyahoga No. 84049, 2009-Ohio-2114.

> "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."

*Am. Builders & Contrs. Supply Co. v. Frank's Roofing, Inc.*, 3d Dist. Marion No. 9-11-41, 2012-Ohio-4661, ¶ 17, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

**{¶38}** Erica waived all but plain error as to the admission of the unredacted video of the ex-parte-civil-protection-order hearing. The circumstances of this case are not exceptional and do not give rise to plain error. Erica does not specify which statements in the hearing video were improperly admitted into evidence; however, she argues that the statements occur "at 3:59, 6:04, and 14:32 through 16:06 of the recording." (Appellant's Brief at 11). We have reviewed the hearing video, including Erica's testimony at those time intervals. The statements by S.L. to which Erica testifies in the video are cumulative of Westgate's properly admitted testimony. At the ex-parte-civil-protection-order hearing, Erica testified that S.L. told her: (1) that Joel sexually molested S.L. for the past three years; (2) that, contrary to S.L.'s initial assertion to Erica, Joel was not removing a splinter

from S.L. when Erica walked into the barn and saw S.L. with her shirt raised and Joel's hands near S.L.'s breasts; and (3) that when Joel was working on a dress for S.L., Joel would have S.L. come upstairs and get naked, and he would touch her. (State's Ex. 2).

**{¶39}** Westgate similarly testified that S.L. told her: (1) that Joel molested S.L. for the past three years; (2) that Erica walked into the barn as she was lifting her shirt up at Joel's direction; and (3) that, in the course of Joel helping her make a dress, "he had touched her breasts on top of skin." (Mar. 18, 2015 Tr. at 16-19). Therefore, Erica's testimony at the ex-parte-civil-protection-order hearing is cumulative to Westgate's testimony at the adjudicatory hearing. *See In re Davis*, 2000 WL 1783571, at *4. Moreover, Westgate testified to S.L.'s description of additional instances of sexual abuse by Joel to which Erica did not testify at the ex-parte-civil-protection-order hearing. (Mar. 18, 2015 Tr. at 18).

**{¶40}** For these reasons, we conclude, without addressing whether Erica's testimony concerning S.L.'s out-of-court statements are hearsay, that it was not plain error for the trial court to admit in its entirety the video recording of the ex-parte-civil-protection-order hearing. *See Matter of Mosley*, 12th Dist. Butler No. CA93-06-111, 1994 WL 144322, *2 (Apr. 25, 1994).

**{¶41}** Erica's first, second, and third assignments of error are overruled.

**Assignment of Error No. V**

**The Trial Court's Decision Determining that S.L. was an Abused Child Pursuant to R.C. § 2151.031(A) was Against the Manifest Weight of the Evidence and Not Proven by Clear and Convincing Evidence.**

{¶42} In her fifth assignment of error, Erica argues that the trial court's adjudication of S.L. as abused is against the manifest weight of the evidence. Specifically, she argues that without the allegedly improper hearsay evidence that we discussed above in addressing Erica's first, second, and third assignments of error, "[t]he only other evidence which supported the allegations of abuse were statements made by [Erica] regarding an incident in the barn in which [Erica] witnessed S.L. lifting her shirt in the presence of [Joel]." (Appellant's Brief at 16). Erica argues, "This sole incident, even if not wholly ambiguous is insufficient to meet the required clear and convincing standard of proof and the court's determination that S.L. was an abused child pursuant to R.C. §2151.031(A) is against the manifest weight of the evidence." (*Id.*).

{¶43} In reviewing a trial court's adjudication of a child as abused, we will not reverse the judgment of the trial court as being against the manifest weight of the evidence if the judgment is "supported by some competent, credible evidence going to all the essential elements of the case." *In re Freed Children*, 2009-Ohio-996, at ¶ 25, citing *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 280 (1978). As we noted above, the party seeking the adjudication bears the burden of

establishing dependency by clear and convincing evidence. *In re M.H.*, 2009-Ohio-6911, at ¶ 17; *In re Savchuk Children*, 180 Ohio App.3d 349, 2008-Ohio-6877, at ¶ 33; *In re D.W.*, 2007-Ohio-2552, at ¶ 18. "'[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct.'" *In re Freed Children* at ¶ 25, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). "Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment." *Id.*, citing *Wilson* at ¶ 24.

{¶44} The Agency alleged in its complaint that S.L. is an abused child under R.C. 2151.031(A). (Case No. 21530001, Doc. No. 1). That statute provides:

> As used in this chapter, an "abused child" includes any child who:
>
> (A) Is the victim of "sexual activity" as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child * * *.

R.C. 2151.031(A). R.C. 2907.01(C) provides, "'Sexual activity' means sexual conduct or sexual contact, or both." Relevant to this case, R.C. 2907.01(B)

provides, "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶45} Erica's argument that the trial court's adjudication of S.L. as abused is against the manifest weight of the evidence is premised on her argument—under her first, second, and third assignments of error—that the trial court improperly admitted hearsay evidence. We rejected those arguments above and overruled Erica's first, second, and third assignments of error. Moreover, the trial court's adjudication of S.L. as abused is supported by some competent, credible evidence going to all the essential elements of the case. Specifically, there is some competent, credible evidence supporting the trial court's conclusion that S.L. was the victim of sexual contact, which is included in the definition of sexual activity.

{¶46} Westgate, whose testimony the trial court properly admitted, testified that S.L., who is a female, informed her of an instance when Joel "touched her breasts on top of skin" while he was helping S.L. make a dress. (Mar. 18, 2015 Tr. at 19). Westgate also testified that S.L. told her that, during camping trips "to the middle of nowhere," Joel "would ask her to take all of her clothes off. And then he would use her makeup to draw tattoos on her chest and her vaginal area." (*Id.* at 18). Westgate testified, "[S.L.] said he'd use his fingers to do that. So his

fingers touching her chest and her vaginal area." (*Id.*). This testimony is some competent, credible evidence supporting the conclusions that Joel touched erogenous zones of S.L.—namely, her breasts and pubic region—and that S.L. was therefore the victim of sexual activity, which includes sexual contact, where such activity would constitute an offense under R.C. Chapter 2907. Erica argues that the incident in the barn "is insufficient to meet the required clear and convincing standard of proof." (Appellant's Brief at 16). However, even ignoring all evidence related to the incident in the barn, there is some competent, credible evidence supporting the trial court's judgment.

{¶47} For these reasons, the trial court's adjudication of S.L. as abused is not against the manifest weight of the evidence.

{¶48} Erica's fifth assignment of error is overruled.

### Assignment of Error No. VIII

**The Juvenile Court failed to Comply with Juv. R. 37(A) Requiring the Court to Make a Record of Adjudicatory and Dispositional Proceedings in Abuse and Dependency cases.**

{¶49} In her eighth assignment of error, Erica argues that the trial court failed to satisfy its obligation under Juv.R. 37(A) to make a record of the adjudicatory hearing. Specifically, Erica argues that, because the term "(INAUDIBLE)" appears 149 times in the March 16 and 18, 2015 transcripts of the adjudicatory hearing—along with other instances in the proceedings "where

-35-

the record is inaudible"—"a proper consideration of the testimony and lower court proceedings is not possible nor can this court presume the regularity of the trial court proceedings." (Appellant's Brief at 19, 21). The Agency argues, "As there is no difficulty in understanding the development of the proceedings regarding the facts at issue, there is no violation of Juv. R. 37(A)." (Appellee's Brief at 14).

{¶50} Juv.R. 37(A) provides, "The juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases * * *. * * * The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device." *See In re B.E.*, 102 Ohio St.3d 388, 2004-Ohio-3361, ¶ 7-8. "Clearly, Juv.R. 37 places primary responsibility upon the juvenile court to record proceedings in these types of cases. Thus, a juvenile court must take whatever steps are necessary to ensure that it records its proceedings." *In re B.E.* at ¶ 12.

{¶51} "'Although failure to make *any* record of adjudicatory and dispositional proceedings clearly violates Juv.R. 37(A), failure to create a *complete* record does not always violate the rule.'" (Emphasis sic.) *In re L.P.R.*, 11th Dist. Lake No. 2010-L-144, 2012-Ohio-1671, ¶ 30, quoting *In re Mitchell*, 11th Dist. Lake Nos. 2002-L-078 and 2002-L-079, 2003-Ohio-4102, ¶ 26. "When a trial court records an entire proceeding that results with portions of the record being inaudible, there is no violation of Juv.R. 37(A) so long as there is no

difficulty in fully understanding the development of the proceedings regarding the facts at issue." *In re D.C.J.*, 8th Dist. Cuyahoga No. 97681, 2012-Ohio-4154, ¶ 13, citing *In re L.P.R.* at ¶ 33-35 and *In re Mitchell* at ¶ 26-30.

**{¶52}** The record reflects that the trial court recorded the entirety of the proceedings. Although the record contains a number of instances where the term "(INAUDIBLE)" appears, there is no difficulty in fully understanding the development of the proceedings regarding the facts at issue. *See In re D.C.J.* at ¶ 14. Therefore, we conclude that the trial court did not violate Juv.R. 37(A). *See id.* at ¶ 11, 14 (concluding that the trial court did not violate Juv.R. 37(A) notwithstanding the arguments of the appellants "that there were 148 'inaudibles' in the voluminous transcript of proceedings in the trial court, that portions of the transcript are inaccurate and unintelligible, and that a lengthy speaking objection is missing from the transcript"). This case is easily distinguishable from *In re C.S.*, a case Erica cites in which the transcript of the audible portions of the proceedings was "intertwined with literally thousands of spots marked 'inaudible.'" 9th Dist. Medina Nos. 04CA0044 and 04CA0045, 2004-Ohio-6078, ¶ 4.

**{¶53}** Erica's eighth assignment of error is overruled.

**Assignment of Error No. VI**

**The Trial Court's Decision Determining that A.L. was a Dependent Child Pursuant to R.C. § 2151.04(D)(1) and (2) was Against the Manifest Weight of the Evidence and Not Proven by Clear and Convincing Evidence.**

{¶54} In her sixth assignment of error, Erica argues that R.C. 2151.04(D)(1) and (2) were not satisfied as to A.L. because "at the time of the filing of the Complaint no child within [Erica's] household had been adjudicated abused or dependent" and because "the Court did not have sufficient evidence to determine that the requirements of R.C. § 2151.04(D)(2) were satisfied." (Appellant's Brief at 17). In light of our decision to sustain Erica's fourth assignment of error, Erica's sixth assignment of error is rendered moot, and we decline to address it. App.R. 12(A)(1)(c). *See also In re K.M.*, 3d Dist. Shelby No. 17-11-15, 2011-Ohio-3632, ¶ 26.

{¶55} In summary, we affirm the trial court's adjudication of S.L. as an abused child under R.C. 2151.031(A). We reverse the trial court's adjudications of S.L. as a dependent child under R.C. 2151.04(C) and of A.L. as a dependent child under R.C. 2151.04(C) and (D) because the trial court failed to comply with R.C. 2151.28(L). We also reverse the trial court's adjudication of A.L. as a dependent child under R.C. 2151.04(D) because that adjudication is not supported by sufficient evidence.

{¶56} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued as to the first, second, third, fifth, and eighth assignments of error, we affirm in part the judgment of the trial court. However, we sustain the fourth and seventh assignments of error as stated above, reverse in

part the judgment of the trial court, and remand for further proceedings consistent with this opinion.

> ***Judgment in Case No. 14-15-07 Affirmed***
> ***in Part and Reversed in Part;***
> ***Judgment in Case No. 14-15-08 Reversed;***
> ***Causes Remanded***

**WILLAMOWSKI, J., concurs.**

**/jlr**

**ROGERS, J., concurring in part and dissenting in part.**

**{¶58}** I concur fully in the majority's resolution of Case No. 14-15-08. However, I respectfully dissent from the majority opinion affirming the adjudication of S.L. as an abused child in Case No. 14-15-07. The majority has determined that Westgate interviewed S.L. for the purposes of medical diagnosis or treatment based on Westgate's testimony that she passed that information along to a multi-disciplinary team which then made recommendations for mental health services. Although I do not disagree with the majority's analysis on Assignment of Error No. I under the state of the law created by appellate courts in this state, I must dissent because the holding strays well beyond the language contained in Evid.R. 803(4).

**{¶59}** Westgate's testimony demonstrates that she has no qualifications to make a medical diagnosis or to prescribe medical treatment. Her multi-

disciplinary team apparently did not make a medical diagnosis or prescribe any medical treatment. When the Rules of Evidence were first formulated, there was no discussion or mention of mental health, and any extension of the Rule to include mental health would necessarily need to proceed through the usual requirements for an amendment to the Rules, which has not happened. Judicial interpretations which in recent years have extended the Rule to supposedly cover social workers and counselors are contrary to the meaning and intent of the original Rule. *See Main v. City of Lima*, 3d Dist. Allen No. 1-14-42, 2015-Ohio-2572, ¶ 48 (Rogers, J., dissenting) (arguing against the expansion of the Ohio Rules of Civil Procedure to allow a defendant to raise the affirmative defense of political subdivision immunity in a Civ.R. 12(b)(6) motion). The logic for the medical diagnosis exception to the hearsay Rule as drafted was its inherent reliability when the declarant knew the statement would be the basis for medical diagnosis and treatment. There is no such inherent reliability when the statement is made to a social worker. In fact, the opposite is often true with the declarant offering what he/she thinks the interviewer wants to hear. Furthermore, there is nothing cited in the majority opinion that even suggests that S.L. was advised, let alone believed, that her responses to Westgate's questions were intended for medical (or mental) diagnosis or treatment. I would therefore sustain Assignment of Error No. I.

{¶60} I realize that I have cited no cases in support of my position, but I have had this discussion on judicial expansion of Rules of Evidence and Procedure with my colleagues often enough to know that they will not be restrained. Unfortunately, other courts have also taken the expansive view of our official Rules and have chosen to ignore the proper methods of amending them. Political correctness has overtaken judicial restraint and will soon render the Rule of Law irrelevant.

{¶61} The majority then proceeds to justify overruling Assignment of Error Nos. II and III by saying that they were just cumulative or repetitious of the hearsay statements offered by Westgate. I would first suggest that cumulative hearsay statements are not necessarily harmless, as apparently assumed by the majority. There is no exception to the inadmissibility of hearsay based on how often it is erroneously permitted. In fact, repetition of inadmissible evidence is more often prejudicial—tell a lie often enough and even the liar will begin to believe it is the truth.

{¶62} I believe the hearing on the issue of abuse was unfair and a new hearing should be held. That is not to say I do not believe the allegations could be true. Just that I believe strict adherence to the Rules of Evidence is necessary to ensure the integrity of our legal system. I would sustain Assignment of Error Nos. I, II, and III and remand for a new hearing. This result would then render

Case Nos. 14-15-07 and 14-15-08

Assignment of Error No. V moot. I agree with the majority's resolution of the dependency adjudication.