[Cite as *In re R.W.*, 2024-Ohio-2223.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:                                          CASE NO. 9-23-45

     R.W.,

DEPENDENT CHILD.

                                               **O P I N I O N**

[ROBBY W. - APPELLANT]

---

**Appeal from Marion County Common Pleas Court**
**Family Division**
**Trial Court No. 2022-AB-0002**

**Judgment Affirmed**

**Date of Decision:  June 10, 2024**

---

**APPEARANCES:**

    *Eric J. Allen* **for Appellant**

    *Charles R. Hall, Jr.* **for Appellee**

**MILLER, J.**

{¶1} Father-appellant, Robby W. ("Robby"), appeals the judgment of the Marion County Court of Common Pleas, Family Division, adjudicating Robby's daughter, R.W., an abused and dependent child. On appeal, Robby argues that the trial court's findings were erroneous, specifically those finding that R.W.'s injuries were inflicted by non-accidental means. For the reasons that follow, we affirm the judgment of the trial court.

*Procedural History and Relevant Facts*

{¶2} R.W. (YOB: 2018) is the biological child of Robby W. and Morgan E. ("Morgan"). On December 16, 2021, R.W., then three years old, was evaluated by Nationwide Children's Hospital in Columbus, Ohio for injuries. The injuries included several healing fractures in her left hand and liver lacerations.

{¶3} On January 4, 2022, Marion County Children's Services ("the Agency") filed complaints in the trial court alleging that R.W. was a neglected child as defined in R.C. 2151.03(F), abused child as defined in R.C. 21515.031(C) and (D), and dependent child as defined in R.C. 2151.04(C). The impetus for the complaint was the discovery of a variety of injuries to R.W., including fractures in her left hand and liver lacerations. The complaint alleged that the history and timeline given by Robby and his live-in fiancée, Amber, were not consistent, which raised further concern.

{¶4} On December 5, 2022, the parties appeared for an adjudication hearing. The Agency's first witness was Dr. Kristin Crichton ("Dr. Crichton"), a pediatrician with the child assessment team at Nationwide Children's Hospital. (Dec. 5, 2022 Tr. at 2-3). Dr. Crichton was qualified as an expert in child abuse pediatrics. (*Id.* at 8). Dr. Crichton testified that her team performed a full assessment of R.W. after she was admitted to Nationwide Children's Hospital. (*Id.* at 9). Dr. Crichton described R.W. as a three-year-old girl who came into the emergency department on December 16, 2021 with a left hand injury that had been identified at an outside hospital. (*Id.*). Further evaluation at Nationwide Children's Hospital revealed R.W. had healing fractures to some of the bones in her hands, forearm, and wrist. (*Id.* at 10). R.W. also presented with bruising to her back, face, arms, and legs. (*Id.*). Additional testing also revealed a Grade Three laceration to her liver. (*Id.*).

{¶5} Dr. Crichton testified she spoke to Robby who explained that he had not noticed any bruising or swelling to R.W.'s hand. (*Id.* at 11). Robby also told Dr. Crichton that R.W. "trips over everything" and plays rough with her younger siblings, but Robby did not recall any specific significant events. (*Id.*). Robby did report R.W. getting her hand stuck in her crib overnight going from Sunday, December 12, 2021 into Monday, December 13, 2021. (*Id.*). Robby relayed that he did not personally observe the injury, but learned about the crib injury through his live-in fiancée, Amber. (*Id.*). Dr. Crichton further reported there was some

confusion regarding the date of the injury. (*Id.* at 11-12). Specifically, the documentation from the emergency department indicated the injury occurred on December 10, 2021 but a social worker at the emergency room documented that the injury happened on December 6, 2021. (*Id.* at 12). The discrepancy was significant because healing fractures were observed on the x-rays, but signs of healing cannot be observed for approximately five to seven days following a fracture. (*Id.*). Therefore, the timing of the injuries was important to determining whether the injury was consistent with the history obtained from the family. (*Id.*).

{¶6} Dr. Crichton described R.W.'s liver laceration as not consistent with the history provided by the family. (Dec. 5, 2022 Tr. at 14). Dr. Crichton stated that they specifically asked Robby regarding any drops or falls that he observed or were reported to him. (*Id.* at 15-16). Dr. Crichton stated that the Grade Three liver injury would be a high-force mechanism such as a fall from a significant height or blunt impact to her abdomen that was significant enough to cause the liver to break because of the force. (*Id.* at 17-19).

{¶7} Dr. Crichton also stated that R.W. had five healing fractures - fractures to three different bones in her hand, one bone in her wrist, and one bone in her forearm. (*Id.* at 26-27). Dr. Crichton stated that the wrist injury could have occurred with a fall landing on her wrist, which would typically be painful and would result in R.W. not using her hand. (*Id.* at 17, 34). However, Dr. Crichton stated that the metacarpal injuries were "unusual" because those bones are not

usually broken without some type of downward force being applied to the hand causing the bones to bend to the point that they break. (*Id.* at 34). Dr. Crichton opined that the metacarpal injuries would be the result of a "big injury" rather than a "small routine injury." (*Id.* at 35). Dr. Crichton stated that the type of events resulting in the liver laceration and hand injuries would be the type of event that would be reported by the caregiver or parent because they indicate "something significant happened to [the] child's body" that would "prompt someone to be concerned about her health and well-being." (*Id.*).

{¶8} Regarding the family's suggestion that R.W.'s injuries could have been caused by R.W. getting her arm caught in her crib, Dr. Crichton testified that she would not expect to observe fractures on R.W.'s hands, wrist, and arm as a result of that event. (Dec. 5, 2022 Tr. at 16). Dr. Crichton described cribs as "generally very safe" and that they typically would not cause "significant injury." (*Id.* at 16, 34).

{¶9} Dr. Crichton testified that, in her opinion, R.W. was an abused child. (Dec. 5, 2022 Tr. at 21, 37). Dr. Crichton stated that there was evidence that R.W.'s injuries were inflicted by non-accidental means. (*Id.* at 19-20). Dr. Crichton stated that her diagnosis of physical abuse was the result of R.W.'s extensive injuries to multiple parts of her body that were not explained by non-accidental means. (*Id.* at 19).

{¶10} On cross-examination, Robby's trial counsel asked Dr. Crichton to opine whether R.W.'s injuries could be caused by a much larger child falling down

stairs while carrying a three-year-old. (*Id.* at 27-28). Dr. Crichton stated that the history of a larger child falling with R.W. was not consistent with the history that was provided to her and that she would need specific information regarding the nature of the stairs and the mechanics of how the larger child fell and landed. (*Id.* at 28). Dr. Crichton stated that such an injury was "possible" but "not very probable" because that history was not provided to her at the time of the evaluation. (*Id.*). Dr. Crichton admitted the history is given by the parents and subject to memory; however, her team asks very specific questions to jog the family's memory and elicit any events that could have resulted in the child's injury. (*Id.* at 29-30). Specifically, Dr. Crichton stated that a Grade Three liver laceration is "extreme" and is consistent with a "significant injury" that she would not typically expect someone to forget. (*Id.* at 30-31).

{¶11} Rebecca Alshire ("Alshire"), R.W.'s caseworker testified that she became involved with the family when she received some concerns that R.W. was found to have several healing fractures in her hand. (Dec. 5, 2022 Tr. at 43). Alshire stated that one of the concerns was that the family provided three different timelines and variations regarding the origin of the injury. (*Id.* at 45, 49-50). Based on her training and experience, Alshire described it being "peculiar" for the manner of the reported injury to be inconsistent. (*Id.* at 53).

{¶12} Alshire stated that S.W., R.W.'s half-brother, was 16 years old and was living in Robby's home at the time of R.W.'s injury. (*Id.* at 47-49). Alshire

testified that Robby initially did not provide an explanation for R.W.'s liver laceration. (*Id.* at 50). Eventually, Robby stated that Amber told him she observed S.W. carry R.W. sideways down the stairs and fall on top of her. (*Id.* at 51). Alshire stated that she spoke to S.W. regarding this allegation and S.W. denied that the incident occurred. (*Id.*).

{¶13} Robby testified that, at the time of R.W.'s injuries, Robby was living with his fiancée, Amber, and his children R.W., S.W., A.W., and M.W. (Dec. 5, 2022 Tr. at 58, 60-61, 84-85). Robby stated that he did not know who caused R.W.'s injuries, but that he has put forth different possibilities. (*Id.* at 61-62). One of the possibilities included his son, S.W., falling while carrying R.W. down the stairs and landing on top of her. (*Id.* at 62, 84-86). Robby stated that he did not personally observe this event, but rather, he learned about it through Amber. (*Id.* at 64-65). Robby described S.W. as being almost 5 feet 11 eleven inches tall and weighing 287 pounds. (*Id.* at 85-86). Robby stated that he had observed S.W. carry R.W. down the stairs in the past and had asked him not to do that again due to his fear of S.W. falling and injuring R.W. (*Id.* at 101-104).

{¶14} Robby stated that R.W. would "constantly" get her hand stuck in the crib and that he observed R.W.'s hand stuck in the crib on approximately three to four occasions. (Dec. 5, 2022 Tr. at 59, 89-92, 99). Robby also provided the possibility that R.W.'s injuries were caused by a slip on the front porch steps that occurred a few weeks prior to the December 16, 2021 date. (*Id.* at 66-67).

{¶15} Robby conceded that R.W.'s injuries would have occurred while she was living in his home. (*Id.* at 64-65). He also conceded that at the time of the evaluation he did not provide health care providers with the possibility that R.W.'s injuries had been caused by S.W. falling while carrying R.W. down the stairs and landing on top of her. (*Id.* at 101, 105). However, Robby explained, he was not taking his medication for his severe ADHD and was exhausted from working long hours at the time of his interview with the child abuse evaluation team at Nationwide Children's Hospital. (*Id.* at 101-102, 106).

{¶16} Finally, Amber testified and described an incident in which S.W. fell down the stairs while carrying R.W. (Dec. 5, 2022 Tr. at 120-121). She stated that in the beginning week of December 2021, she observed S.W. carrying R.W. sideways down the stairs "being silly" when he slid on his back heel and fell down. (*Id.* at 121-122). When S.W. fell down, he slipped back on his heel causing R.W. to hit the stairs with her abdomen with S.W. landing on the bottom part of R.W.'s body. (*Id.* at 121-122, 128, 131-132). Amber stated that R.W. did not cry, only "fussed a little bit" before getting up to play. (*Id.* at 121-122, 127-128).

{¶17} In a magistrate's decision filed on December 12, 2022, the magistrate found by clear and convincing evidence that R.W. was an abused and dependent child. However, the magistrate did not find that R.W. was a neglected child as alleged in the complaint. In a judgment entry filed on January 4, 2023, the trial court adopted the magistrate's decision.

{¶18} On January 14, 2023, Robby filed objections to the magistrate's decision. That same day, Robby filed a motion asking the trial court to consider his objections. In the motion, Robby's trial counsel stated that he had attempted to file his objections via fax on December 26, 2022. His counsel stated that although the fax was successfully sent, the filings were not filed in the electronic filing system. On January 20, 2023, the Agency filed its objection to Robby's motion to file objections to the magistrate's decision.

{¶19} On January 30, 2023, the trial court granted Robby's motion to extend the time to file objections. The trial court found that although the trial court has never accepted filings via fax, Robby's late filing does not prejudice the Agency. The trial court also granted Robby leave to supplement his existing objections and file the transcript of the hearing.

{¶20} Robby filed his amended objections on March 17, 2023. First, Robby raised a "general objection" to the conclusions of law that R.W. was an abused and dependent child. Second, Robby objected to the finding that R.W.'s injuries were caused by non-accidental means. Third, Robby objected to the finding that he was unable to identify how and when the injuries were caused. Fourth, Robby objected to the finding that it was unclear whether he had knowledge of the injuries, or the extent thereof, until the medical diagnosis of the injuries, and that Robby's delayed knowledge created an environment warranting the Agency assuming guardianship

of R.W. The Agency filed its response to Robby's objections. On March 27, 2023, the trial court overruled Robby's objections and adopted the magistrate's decision.

{¶21} A disposition hearing was held on May 19, 2023. In a judgment entry filed on May 30, 2023, the trial court continued R.W. in the temporary custody of her mother under the Agency's protective supervision with Robby receiving visitation as arranged by the Agency. The judgment entry adopting the magistrate's decision was filed on June 26, 2023.

{¶22} On July 11, 2023, Robby filed a notice of appeal. He raises a single assignment of error for our review.

## Assignment of Error

**The trial court erred when it determined that R.W. was an abused and dependent child pursuant to R.C. 2151.03.**

{¶23} In his assignment of error, Robby argues that the trial court erred by overruling his objections and determining that R.W. was an abused and dependent child pursuant to R.C. 2151.03. Specifically, Robby opines that the weight of the evidence established that R.W.'s injuries occurred by accidental means.

R.C. 2151.04 sets forth the definition of "dependent child", and provides:

As used in this chapter, "dependent child" means any child:

(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

(D) To whom both of the following apply:

(1)  The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

Relevant to this appeal, R.C. 2151.031 defines "abused child" and provides:

As used in this chapter, an "abused child" includes any child who:

(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it.  * * *

(D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare.

R.C. 2151.031(C), (D) (Aug. 3, 1989) (current version at R.C. 2151.031(D), (E) (Oct. 3, 2023)).

{¶24} A trial court's determination that a child is dependent pursuant to R.C. 2151.04 must be supported by clear and convincing evidence.  *In re S.L.*, 3d Dist. Union Nos. 14-15-07 and 14-15-08, 2016-Ohio-5000, ¶ 11, citing *In re B.B.*, 3d Dist. Defiance No. 4-10-17, 2012-Ohio-2695, ¶ 32, citing R.C. 2151.35.  "Clear and convincing evidence is that measure or degree of proof which is more than a mere

'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477.

{¶25} A determination of dependency pursuant to R.C. 2151.04(C) focuses on the child's condition or environment, and not on the parent's fault, although a court may consider a parent's conduct insofar as it forms part of the child's environment. *In re O.M.*, 3d Dist. Hancock Nos. 5-22-08 and 5-22-09, 2023-Ohio-341, ¶ 30.

{¶26} Based on the foregoing legal standards and the record in this matter, we find that the trial court's adjudication finding R.W. a dependent and abused child was supported by clear and convincing evidence and was not against the manifest weight of the evidence.

The magistrate's decision stated as follows:

The evidence presented in Court established that [R.W.] presented to Nationwide Children's Hospital after having suffered numerous fractures including fractures to her hand, wrist and arm. Additionally, she was found to have a grade three laceration to her liver. All these injuries were found to be "healing" in nature meaning they had

occurred more than seven to ten days prior to presentation. Upon further investigation by staff at Nationwide Children's Hospital, the explanations given for how the child had been injured were inconsistent with the nature of the injuries. The father presented testimony that the child may have been injured by a fall down a flight of stairs while being carried by a sibling. A possibility which he admits he did not disclose at the time of the hospital staff's investigation. Father's fiancée testified that she witnessed such an incident but did not observe any injury and the child immediately afterward continued to play with other children. There was no evidence that the child's injuries were consistent with that evidence or that the child's reaction to such an injury was consistent with that type of injury. Other than possibilities, the father was unable to say how, where, why, who or what caused the injury. In fact, it is unclear if father had knowledge that any injury had occurred until the medical diagnosis of the injuries. These facts create an environment which warrants the state's assuming the guardianship of the child.

(Doc. No. 81). The trial court overruled Robby's objections and adopted the magistrate's recommendation.

{¶27} In support of his argument that that the Agency failed to prove its case by clear and convincing evidence, Robby contends the evidence supported his argument that R.W.'s injuries were accidental. Furthermore, he argues that the Agency could not definitively state, let alone prove, how R.W.'s injuries occurred. We disagree.

{¶28} At the adjudication hearing, Dr. Crichton, an expert in child abuse pediatrics gave her opinion that R.W.'s injuries were not inflicted by accidental means and that R.W. was an abused child. In support of her assertion, Dr. Crichton pointed to the severity of the injuries, the fact that multiple parts of R.W.'s body

were injured, and the family's inability to give a history consistent with the nature and extent of R.W.'s injuries.

{¶29} Robby's argument relies heavily on the possibility that R.W.'s injury could have been caused by S.W. falling down the stairs while carrying R.W. and falling on top of her. However, this argument is unpersuasive. Robby argues that Dr. Crichton admitted, "it was possible" that R.W.'s injuries could have occurred as a result of the fall. (Appellant's Brief at 6). However, when asked by Robby's counsel whether the injuries could be caused by a much larger child falling down the stairs while holding a three-year-old, she stated that such an injury was theoretically "possible" but "not very probable." (Dec. 5, 2022 Tr. at 27-28). Dr. Crichton stated that to render an opinion, she would need to know more information regarding the nature of the stairs and the mechanics of how the fall occurred and how the children landed. Furthermore, the possibility of R.W.'s injuries being caused by such a fall was not provided in the history given by the family. Dr. Crichton indicated that the significant injuries she observed would have caused "extreme" pain and would not be of the type that the caregiver or family would forget and that she and her team asked specific questions to jog the family's memory and to help elicit any possible explanation for the injury, such as a fall.

{¶30} Amber testified that when the alleged fall happened, R.W. quickly returned to playing with her younger sister and continued to act normally for the remainder of the day, including playing with her siblings and eating dinner. Such

testimony undermines Robby's argument that the fall down the stairs was of such a serious nature that it caused significant injury to R.W.'s body. Additionally, R.W. presented with bruises on various parts of her body, including the back of her arms. The doctor testified such bruising was typically non-accidental and raised further concern that R.W. was physically abused.

{¶31} Robby also argues that the Agency was unable to demonstrate how the injury occurred. However, the Agency was not required to establish a specific cause for each injury in order to prove R.W. was an abused and dependent child. Rather, Dr. Crichton repeatedly stated her opinion that the array of R.W.'s injuries were caused by non-accidental means and that R.W. was physically abused.

{¶32} Thus, we find that the Agency proved by clear and convincing evidence that R.W. was an abused and dependent child. Accordingly, Robby's assignment of error is overruled.

*Conclusion*

{¶33} For the foregoing reasons, Robby's assignment of error is overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas, Family Division.

***Judgment Affirmed***

**WILLAMOWSKI, P.J., and ZIMMERMAN, J., concur.**